33219. WIMBERLY *v.* WIMBERLY.

540

Decided September 21, 1950. Rehearing denied October 19, 1950.

*Harris, Henson, Spence & Gower,* for plaintiff in error.
*James H. Dodgen,* contra.

Townsend, J. (After stating the foregoing facts.) Code § 49-607 provides as follows: "When one application for guardianship under this law shall have failed upon the merits, the

ordinary shall not issue a second commission, unless the petition shall be verified by at least three respectable disinterested neighbors, in addition to the oath of the applicant." The briefs of counsel for both sides are in accord that the sole question for the determination of this court is whether all three of the persons signing the supporting affidavit to the petition for guardianship were "respectable disinterested neighbors" within the meaning of this section. It is contended in the special ground that the judge erred in charging the jury that a neighbor is "a person who lives near another; one whose abode is not far off; one entitled, as a fellow being, to receive and accept and to render kindnesses; one on friendly terms," and in further charging that, should the jury find that these three persons, or any of them, were not respectable, disinterested neighbors of the defendant, they would be authorized to find in favor of her special plea. The objections are to the definition of the word "neighbor," the failure to define other words, and that the charge did not present to the jury a correct principle of law applicable to the case, thus making it impossible to apply the statute involved, as properly construed, to the facts.

The Code section with which we are here dealing appears in our first Code (Code of 1863). It is not the result of statutory enactment. Nor does it derive from the common law, since the common law dealt with the confinement of lunatics only to the extent of confining those whom it was feared might "commit any crime or offense or serious mischief." See Chitty, General Practice, Vol. IV. To ascertain its origin, then, it may be of interest to note that the Act to Provide for the Codification of the Laws of Georgia (Ga. L. 1858, p. 95) gave authority to the codifiers to embrace in condensed form the laws of Georgia, whether derived from the common law, Constitution, decision of the Supreme Court, or statutes of England of force in this State, and that it should, *if practicable be modeled upon the present Code of Alabama.* Reference to this latter word (Ala. Code, 1852, *Guardian and Ward,* § 2751) reveals a Code section relating to an initial petition seeking to have a guardian appointed for a person of unsound mind, and requiring that the judge of probate issue a writ to summon "twelve disinterested persons of the neighborhood for the trial thereof." This section remains

unchanged. (Ala. Code of 1940, § 21-12.) Our own statute in force at that time (Ga. L. 1855-6, p. 151) did not provide that the persons summoned should be from the neighborhood of the defendant. Most likely the Alabama Code section suggested to the framers of our Code the plan of incorporating by affidavit the services of "disinterested persons of the neighborhood" to make sure that the alleged incompetent would not be harassed by repeated inquisitions of this sort, should it appear that the first petition was without foundation. This is but one example of the skill and adaptability shown by the framers of our Code which has made it a model of clarity and flexibility. (See "First Codification of the Substantive Common Law", *Tulane Law Review,* p. 178 et seq.) Alabama decisions have subsequently interpreted the words "twelve disinterested persons of the neighborhood" to mean the neighborhood in which the defendant resides, not merely the county of his residence. See Benton *v.* Benton, 211 Ala. 43 (99 So. 300) and cases there cited. Considered in this light, the charge of the court sufficiently defined the word "neighbor," nor was it subject to the criticism that it would make it impossible for the jury to apply the law, properly construed, to the facts of the case.

(b) The defendant offered evidence to show that one of the affiants, Julia M. Franklin, was a colored servant of the petitioner who worked for him one or two days a week and lived in a house on the alley nearby; that petitioner procured for Zeltman, the second affiant, an apartment in one of the defendant's houses where he stayed for a week and a half; that during this time he was employed as a painter by the petitioner; that along about then he swore out a warrant for the defendant on a charge of assault and battery, which was dismissed after hearing thereon, and that he left the State shortly after the filing of this petition. As to the third affiant, Dunn, the petitioner testified that he lived next door to the defendant; that the petitioner discussed with him the value of the defendant's property, and that Dunn told him he would probably have to move, and that if the defendant's house was ever offered for sale he would be interested. He further testified that these three affiants were procured by himself.

Under all the circumstances, and construing the evidence in

its light most favorable to uphold the verdict of the jury, there was competent legal evidence from which it might have been found that one (or more) of the affiants was not a "disinterested neighbor" within the meaning of the Code section. It was held in *McRae* v. *Wilby*, 59 *Ga. App.* 401 (1 S. E. 2d, 77), that a witness who is in the employ of a party to a suit and who testifies in favor of his employer cannot be called a "disinterested" witness; that the credit to be given the testimony of such a witness is for the jury; and that, when " 'the point be directly made to the jury as to what credit shall be given to his testimony, and they deliberately decide to reject it, and the judge trying the case, who, with the jury, both see and hear the party testify, refuses to interfere, we do not think a case is made to demand our intervention' "—quoting *Laramour* v. *Minish*, 43 *Ga.* .282. In this case, under the pleadings, it was a question of fact for the jury as to whether the affiants were disinterested in the premises and they found against them upon this plea. There is evidence which would have authorized them to do so. This being the case, the trial court properly overruled the motion for a new trial as amended.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*