71178. ADAMS v. THE STATE.
(342 SE2d 747)

BEASLEY, Judge.

Appellant was tried on six charges. Two stemmed from events on December 27, 1983: attempted burglary of a gas station (OCGA §§ 16-4-1; 16-7-1) and theft by taking of a newspaper box (OCGA § 16-8-2). Four arose from events on December 29: attempted armed robbery of a hotel patron (OCGA §§ 16-4-1; 16-8-41), attempted burglary of a seed and feed company (OCGA §§ 16-4-1; 16-7-1), possession of tools for the commission of a crime (OCGA § 16-7-20), and possession of marijuana, less than an ounce (OCGA § 16-13-30). The trial court refused to sever these charges into two separate trials. Defendant was convicted by a jury on each count and sentenced. His motion for new trial was denied and he appeals.

1. The first assertion is that the trial court erred in denying the motion for severance of offenses. Appellant had moved that the December 27 charges be tried separately from the December 29 charges and that at the very least the December 29 attempted armed robbery charge be severed.

" '[W]here the joinder [of offenses] is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance "lies within the sound discretion of the trial judge since the facts in each case are likely to be unique." [Cits.] In determining whether severance is necessary to achieve a fair determination of defendant's guilt or innocence of each offense, the "court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." [Cit.]' [Cits.]" *Thomas v. State*, 174 Ga. App. 761 (1) (331 SE2d 627) (1985). See also *Weaver v. State*, 169 Ga. App. 890, 891 (1) (315 SE2d 467) (1984). The case establishing the standards for joinder is *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975).

Although the offenses for which appellant was tried took place on two separate dates, there was ample evidence introduced by the state to support the trial court's conclusion that "these offenses are a series of acts connected together and also that they are a series of acts constituting parts of a single scheme or plan." All of the offenses, except the charge relating to the marijuana which was thrown from defendant's pocket as he was being chased by police, were theft-type or theft-related crimes. Appellant was with the same two companions on

both dates. All of the offenses took place within two days of each other, at night. The same mode of transportation, a co-defendant's car, was used. The tire iron/crowbar used in the December 27 attempted burglary of the gas station was used to try to break into the newspaper box on the same date, and was again used in the December 29 attempted burglary of the seed and feed company just prior to the attempted armed robbery at the hotel. Thus, the modus operandi was the same. Also, the continuing objective to gain property illegally contributed to tying the events together.

The number of offenses and the complexity of the evidence was not such that the jury would be hindered from being able to distinguish the evidence and apply the law of the case intelligently to each alleged offense. *Dingler v. State,* supra. They were common crimes committed in a commonly-occurring way.

Nor do we find appellant's alternate enumeration, that the trial court erred in not severing the attempted armed robbery charge from the remaining charges, meritorious for the reasons just discussed. It was simply part of the whole scheme to get money quickly without earning it.

2. Appellant next asserts that the trial court erred in denying his motion for directed verdict as to the attempted armed robbery charge, arguing that the state failed to prove the elements necessary to convict.

OCGA § 16-4-1 provides: "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." *Howell v. State,* 157 Ga. App. 451, 454 (4) (278 SE2d 43) (1981) states: " 'An attempt to commit a crime consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime . . . ; and third, a failure to consummate its commission.' " As it is uncontroverted that an armed robbery was not consummated, we now focus on whether the first two elements were proved.

a) Intent. Appellant contends that the intent to commit the crime must be formed prior to taking the "substantial step" towards its commission and that such was not the case here. OCGA § 16-4-1 provides, however, that the intent must be in conjunction with — "with" — the performing of the substantial step, while it may, and ordinarily does, also exist "prior to," that is not the question; they must be in confluence because if the intent is abandoned before the substantial step, the latter loses its criminal character and becomes innocuous.

In any event, the state introduced testimony of one co-defendant that the reason they drove over to the hotel was that "Stanley [appellant] was going to throw somebody in the back of the boot and rob

them." The other co-defendant testified that before they went to the hotel appellant and co-defendants had talked about robbing someone and that this was the reason that they went. From this testimony, as well as the "substantial steps" taken which we next address, there was sufficient evidence from which the jury could find intent and that it coexisted with at least one criminally-tainted step. Accord *Riddle v. State*, 145 Ga. App. 328, 332 (2) (243 SE2d 607) (1978), overruled on other grounds, *Adsitt v. State*, 248 Ga. 237, 240 (6) (282 SE2d 305) (1981).

b) "Substantial step." " 'In order to constitute the offense of attempt to commit a crime, the accused must do some act towards its commission. Commission means the act of committing, doing, or performing; the act of perpetrating . . . Mere acts of preparation, not proximately leading to the consummation of the intended crime, will not suffice to establish an attempt to commit it.' [Cit.] . . . ' "To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case." ' [Cits.] . . . The 'substantial step' language [of OCGA § 16-4-1] . . . 'shifts the emphasis from what remains to be done . . . to what the actor *has already done.* The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial . . . In addition to assuring firmness of [criminal] purpose, the requirement of a substantial step will remove very remote preparatory acts from the ambit of attempt liability and the relatively stringent sanctions imposed for attempts.' " *Howell*, supra at 455-456.

The state introduced the following evidence of "substantial steps": Appellant and the co-defendants had discussed the armed robbery prior to arriving at the hotel, and this was in fact the purpose of their trip. They drove about an hour to get to the hotel, and when pulling into the hotel parking lot they agreed that they would rob someone who would come out of the hotel, hit the person on the head, and put the victim in the trunk of the car. Both appellant and one of the co-defendants were armed with handguns. Appellant had two stocking caps on over his head, including a new one in which he had cut holes for his eyes, nose, and mouth while they were traveling to the hotel. The three companions drove around the parking lot until they were stopped by police, at which point appellant fled from the car, discarding both the marijuana and the gun before he was apprehended by the police.

As the above actions are inexplicable under the circumstances as

a lawful act and are more than mere preparation, we find no error in the trial court's conclusion that the jury could find that substantial steps toward the armed robbery had been taken. *Howell,* supra. Accord *J.E.T. v. State,* 151 Ga. App. 836, 838 (1) (261 SE2d 752) (1979).

Thus, appellant's motion for directed verdict was properly denied as the evidence was sufficient to enable any rational trier of fact to find the existence of the offense charged beyond a reasonable doubt. *Maddox v. State,* 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984).

3. In view of Division 2, the trial court did not err in denying appellant's motion for new trial on the attempted armed robbery charge due to insufficient evidence.

4. Lastly, appellant enumerates as error the admission into evidence, over objection, of the testimony of appellant's parole officer. He asserts that he was precluded from effectively cross-examining her since questioning about her relationship to appellant would have put his character in issue. The witness was called by the state to impeach appellant's testimony that he had never seen the gun before trial. There was evidence that it had been found along the path of his flight from police officers at the hotel parking lot. Appellant had told his parole officer, when she visited him in jail awaiting this trial, that, when one of his co-defendants saw the police, he gave the gun to appellees to throw away, which he did.

Contrary to appellant's contention, his right to an effective cross-examination was not unconstitutionally restricted by the court's ruling but rather by his own choices. Appellant invited the impeaching testimony by testifying that he had never seen the gun before, knowing full well that he had earlier told the parole officer otherwise. He could not, by his display of innocence before the jury, insulate himself from the impeaching evidence simply because of who she was. When the witness testified about appellant's familiarity with the gun, appellant was free to, yet chose not to, conduct a cross-examination as to this testimony.

The trial court took precautionary measures to ensure appellant's character would not be placed in issue by the witness' testimony. It instructed the witness, prior to her testifying, not to mention that she was a parole officer and also directed the state to restrict its questioning of the witness to the matter of appellant's knowledge of the gun. Both instructions were complied with, and the jury was informed simply that the witness was employed by the state, so appellant's character was not placed in issue.

Furthermore, even if defendant's character would have been placed in issue as a consequence of revealing her identity, no error would have resulted. "It is well settled that it is not error to admit essential evidence which only incidentally may place a defendant's character in issue." *Singleton v. State,* 170 Ga. App. 358, 359 (317

SE2d 335) (1984).
*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 12, 1986.

*Peter F. Boyce, Albert F. Nasuti*, for appellant.
*Thomas C. Lawler III, District Attorney, Phil Wiley, Assistant District Attorney*, for appellee.