## 43611. FORD v. THE STATE.

### (349 SE2d 361)

MARSHALL, Chief Justice.

Horace Dwayne Ford was convicted of malice murder and armed robbery.[1] The trial judge ruled that the armed robbery conviction merged into the murder conviction, and the appellant was sentenced to life imprisonment on the murder charge. He appeals. We affirm. These are the facts which the evidence authorized the jury in finding.

In March of 1980, the appellant was employed at a salary of $250 per week, whereas he was engaged in a "cocaine habit" costing far in excess of that sum. The appellant's girl friend was Pearlie Mae Berry. She was engaged in the sale of illegal drugs, and she supplied the appellant with whatever cocaine he could not afford to buy with his own funds.

On March 20, 1980, Ms. Berry pawned a reel-to-reel recorder at the Village Pawn Shop, which was located in the Columbia Village Shopping Center in Decatur, Georgia. However, on the following day, March 21, she was in need of money to pay her rent.

The victim in this case, James Robert Cutliff, was a part-owner of this pawnshop. On March 21, an employee of the pawnshop discovered the victim at approximately 10:00 a.m. He was lying on his stomach in the back of the store; he was in a pool of blood, and he was making gurgling noises. His hands and feet were tied together, and his mouth was filled with gauze. Emergency medical technicians were summoned. Expert medical testimony established that the victim died as a result of a single gunshot wound to his head, fired from a .38 caliber gun from a distance of approximately three to five feet.

The victim's wallet, which contained an Exxon gasoline credit card, was missing. Various items of jewelry and firearms were also missing from the pawnshop. A jigsaw which had been taken from the

---

[1] The crime in this case was committed on March 21, 1980. The trial began on February 3, 1986. The jury returned its guilty verdict on February 6, 1986, and the appellant was sentenced to life imprisonment on February 14, 1986. The appellant's motion for new trial was filed on March 12, 1986, and denied on April 30, 1986. His notice of appeal was filed on May 29, 1986. The appeal was docketed in this court on June 18, 1986, and the case was submitted for decision on August 1, 1986.

shop was later recovered from the appellant's brother's home.

At approximately noon on March 21, the appellant and Ms. Berry went to an Exxon gasoline station on Old National Highway, and the appellant signed a credit card receipt for a gasoline purchase using the name of James Cutliff. The appellant and Ms. Berry then proceeded to the Mark Inn located at Stewart and Cleveland Avenues and I-75. The appellant rented a room at this motel, using the name "Tony Hill," which was an alias commonly used by him.

At the motel, the appellant approached another couple, Keith and Bridgetti O'Dell, and he asked them if they wanted to make "some real money" by robbing a customer in a nearby bar. This they declined to do. The appellant then offered to sell Keith O'Dell a gun. Keith O'Dell went with the appellant to his motel room, where the appellant showed him approximately 25 to 30 handguns with pawnshop tags attached. The appellant sold O'Dell a handgun, which was later determined to have been stolen from the Village Pawn Shop.

On March 22, the appellant traveled by bus to Miami, Florida. He took approximately 10 to 12 weapons with him. He sold some of these weapons, one of which was identified as a firearm taken in the pawnshop robbery. On April 24, the appellant surrendered to the DeKalb County Police Department on other charges, and he was arrested on the present charges.

The facts will be further developed insofar as is necessary for an illumination of the issues presented on appeal.

1. In the first enumeration of error, the appellant argues that the trial court erred in denying his motion to suppress two out-of-court statements given by the appellant to the police. When the appellant voluntarily surrendered to the police on April 24, he was accompanied by an attorney. This attorney did not represent the appellant at trial, and he never became the appellant's counsel of record. Upon being interrogated by the police, the appellant was given his *Miranda* warnings with this attorney present. Counsel conferred with the appellant after the warnings were given. He permitted the police to interrogate the appellant without his being present, although he admonished the appellant not to make any written statement to the police. The appellant subsequently gave an oral statement to the police admitting that, "I was there [at the scene of the crime] but I didn't shoot nobody."

Approximately one week later, an agent with the United States Treasury Department, Bureau of Alcohol, Tobacco, and Firearms, interrogated the appellant in regard to the recovery of firearms stolen from the pawnshop. After waiving his *Miranda* rights, the appellant gave a statement to the effect that he had gotten the guns from the other people implicated in the pawnshop robbery, and "they had took the guns from [a] dope dealer."

(a) The appellant argues that his statement to the DeKalb

County Police should have been suppressed for two reasons.

First, the appellant argues that this statement was obtained in violation of *Edwards v. Arizona,* 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). In *Edwards v. Arizona,* supra, the United States Supreme Court embellished upon the prophylaxis of *Miranda* by holding "that an accused . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U. S. at pages 484-485. See also *Maine v. Moulton,* 474 U. S. ___ (106 SC 477, 88 LE2d 481) (1985). Here, the evidence fails to support the appellant's assertion that he expressed a desire to deal with the police only through the medium of counsel.

Second, the appellant argues that counsel was ineffective in not being present during the police interrogation.

Among other things, the Sixth Amendment to the United States Constitution, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused in a criminal prosecution the right to assistance of counsel for his defense. *Gideon v. Wainwright,* 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963); *Argersinger v. Hamlin,* 407 U. S. 25 (92 SC 2006, 32 LE2d 530) (1972). This right to counsel has been interpreted as meaning the right to be represented by counsel rendering reasonably effective assistance. *MacKenna v. Ellis,* 280 F2d 592, 599 (5th Cir. 1960); *Pitts v. Glass,* 231 Ga. 638, 639 (203 SE2d 515) (1974). However, this constitutional right to the assistance of counsel, as established in the Sixth Amendment, does not attach until the initiation of adversary judicial proceedings against the accused. *Ross v. State,* 254 Ga. 22 (3, b) (326 SE2d 194) (1985) and cits. Here, the advice given by counsel to the appellant with respect to the police interrogation occurred prior to the initiation of adversary judicial proceedings. Thus, the appellant's ineffective-assistance-of-counsel claim is without merit.

However, the appellant also seems to be basing his ineffective-assistance-of-counsel claim on the fact that *Miranda* gives him the right to confer with counsel prior to being subjected to a custodial police interrogation. Here, the appellant did confer with counsel prior to the interrogation, and the appellant argues that the advice given by counsel in this conference constituted constitutionally ineffective assistance of counsel. This argument is premised on a misreading of *Miranda. Miranda,* in judicially implementing the Self-Incrimination Clause of the Fifth Amendment, holds that the accused must be informed of his right to counsel before a custodial police interrogation takes place. *Miranda* does not hold that if the accused exercises that right and consults with counsel prior to the interrogation, the advice

given by counsel must evince a certain level of competence. Rather, it is the Sixth Amendment that guarantees effective representation of counsel. Here, the argument is not that *Miranda* was violated; the argument is not that the confession was coerced; rather, the argument is that counsel was ineffective in allowing the interrogation to take place. That is a Sixth Amendment claim, and, as previously stated, at the stage in the proceedings under review the Sixth Amendment right to counsel had not arisen.

(b) The appellant also argues that his statement to the ATF agent is inadmissible under *Edwards v. Arizona*, supra. Again, there is no evidence in the record that, prior to making this statement, the appellant expressed a desire to deal with this law-enforcement agent only through the medium of counsel.

2. In the second enumeration of error, the appellant argues that the state erred in failing to disclose various items to the defense pursuant to the appellant's pretrial "Motion for Discovery."

(a) In Georgia, only the following forms of discovery are available to a defendant in a criminal case: (1) An examination by an expert of the defendant's choosing of crucial evidence subject to varying expert opinion, *Sabel v. State*, 248 Ga. 10 (6) (282 SE2d 61) (1981). (2) An OCGA § 24-10-26 notice to produce documentary evidence in the possession of the state, *Sims v. State*, 251 Ga. 877 (4) (311 SE2d 161) (1984); however, pretrial statements of state's witnesses are not within the ambit of the § 24-10-26 notice to produce, *Stevens v. State*, 242 Ga. 34 (247 SE2d 838) (1978). (3) Disclosure by the prosecution of exculpatory material under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). (4) Discovery pursuant to OCGA § 17-7-210 of the defendant's statement given while in police custody. (5) Discovery pursuant to OCGA § 17-7-211 of scientific reports in possession of the prosecution.

(b) Here, Keith and Bridgetti O'Dell were initially charged with the pawnshop murder and armed robbery. However, after the O'Dells gave statements implicating the appellant, the charges against them were dropped, because, as testified to by Bridgetti O'Dell, "we turned State's evidence is what I gathered." Pearlie Mae Berry was indicted for the armed robbery and murder, and she pled guilty to the charge of armed robbery. She gave a statement to police; however, the contents of this statement do not appear in the portion of the transcript cited by the appellant.

The appellant argues that under *Brady v. Maryland*, supra, and *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972), the prosecution committed constitutional error in refusing to divulge promises of leniency extended by the police to Ms. Berry and to the O'Dells.

The fact that the charges against the O'Dells may have been

dropped, in exchange for their furnishing state's evidence, was presented to the jury through the testimony of Bridgetti O'Dell. Consequently, we find no *Brady* violation here. See *Castell v. State*, 250 Ga. 776 (2b) (301 SE2d 234) (1983). As to Pearlie Mae Berry, there is no evidence in the record of any promise of leniency to her. See *McLemore v. State*, 255 Ga. 107 (335 SE2d 558) (1985) and cit. In any event, from our review of the transcript, we do not find that any out-of-court statement or in-court testimony of Pearlie Mae Berry was received in evidence. Consequently, no *Brady* violation appears here.

(c) A DeKalb County police officer testified that the O'Dells had been released on bond after the results of a polygraph examination showed that Bridgetti O'Dell "was being honest in her statement."

The appellant argues that the results of this polygraph examination should have been turned over to the defense under the appellant's OCGA § 17-7-211 request for copies of scientific reports. We agree. *Taylor v. State*, 172 Ga. App. 408 (2) (323 SE2d 212) (1984). The sanction for failure of the prosecution to furnish a requested copy of such a report is the exclusion of that report from evidence. Id. Here, when the witness made reference to the results of the polygraph examination, defense counsel made no objection. Therefore, we conclude that the appellant's objection with respect to the admission of the results of the polygraph examination was waived.

(d) The appellant also states that through pretrial motion he requested a copy of all statements of witnesses, and he argues that the prosecution erred in not turning over to the defense the statements to the police given by the O'Dells. However, as previously stated, statements of witnesses are not discoverable as such. *Stevens v. State*, supra.

The appellant points to discrepancies in these witnesses' testimony as to whether the appellant had given Keith O'Dell a Derringer, as to whether there had been a conversation between the appellant and Keith O'Dell with reference to certain other crimes, and as to the time the O'Dells first met the appellant. All of these discrepancies were brought out at trial. Therefore, any required compliance with *Brady v. Maryland* was effected through disclosure at trial. The appellant has made no showing that a pretrial disclosure was necessary in order to furnish the appellant a fair trial. See *Castell v. State*, supra.

(e) Finally, the appellant argues that, pursuant to his pretrial motion, the prosecution erred in failing to divulge to the defense a "supplemental report" prepared by a homicide investigator for the DeKalb County Police Department.

The appellant makes no reference to the contents of this report. Rather, he simply argues that under *Freeman v. State*, 599 F2d 65 (5th Cir. 1979), the report should have been disclosed. See also

*United States v. Deutsch,* 475 F2d 55, 57 (5th Cir. 1973); *Emmett v. Ricketts,* 397 FSupp. 1025, 1041 (N.D. Ga. 1975). What *Freeman* condemned was the deliberate concealment by the authorities of the identity of a key eyewitness to the crime. *Freeman* is, therefore, clearly inapposite here. We find the appellant's argument to be without merit.

3. In the third enumeration of error, the appellant argues that the trial court erred in failing to take any remedial action against an individual who wilfully disregarded a defense subpoena.

An employee in a supervisory capacity with the Mark Inn Motels was subpoenaed for the purpose of producing motel records showing the registration of the appellant and the O'Dells at the Mark Inn. At trial, this employee testified that he was not responsible for maintenance of such records and that he had referred the matter of the subpoena to the motel's management. The appellant did not request any remedial action on the part of the trial court.

Consequently, we find that the complaint asserted herein has been waived.

4. In his fourth enumeration of error, the appellant argues that the trial court erred in admitting in evidence a list of jewelry missing from the Village Pawn Shop, over objection that its authenticity had not been proven and no proper foundation for its being a business record was laid.

Here, an employee of the pawnshop testified that this list was compiled at the request of the DeKalb County Police and that, although the list was not in the witness' handwriting, he helped compile it. An officer with the DeKalb County Police Department testified that he requested this list to be made, and he identified the document admitted in evidence as the list turned over to him. This testimony adequately authenticated the writing. See *Martin v. State,* 135 Ga. App. 4 (3) (217 SE2d 312) (1975) and cits. It is true that a foundation may not have been laid for this list's (or memorandum's) being admitted as a business record regularly entered in the due course of the business of the police department. Cf. *Tidell Co. v. Robley Hats, Inc.,* 125 Ga. App. 102 (5) (186 SE2d 489) (1971). However, this witness was certainly authorized to testify from this memorandum for the purpose of refreshing his recollection. OCGA § 24-9-69; *Mason v. State,* 147 Ga. App. 179 (2) (248 SE2d 302) (1978). We hold that it is highly probable that any error in admission of the memorandum was harmless.

5. In his fifth enumeration of error, the appellant argues that the trial court erred in admitting certain photographs of the deceased in evidence, in that they were inflammatory and cumulative of the pathologist's testimony as to the entry and exit of the bullet wounds. Thus, the appellant argues that their prejudicial effect outweighed

their probative value.

We have reviewed these photographs in the record, and we do not find them to be inflammatory. Therefore, we find no abuse of discretion on the part of the trial court, or prejudicial error to the appellant, in their admission.

6. In his sixth enumeration of error, the appellant argues that the trial court erred in admitting evidence which placed his character in issue before he testified.

Specifically, the appellant complains of testimony elicited from a DeKalb County police officer that he was familiar with the name Pearlie Mae Berry and that he was aware of connections that she would have had to the appellant.[2] This police officer then proceeded to testify that the connection between the appellant and Pearlie Mae Berry was that they were boyfriend and girl friend.

Where a criminal defendant does not place his character in issue, it is improper for the prosecuting attorney to ask a police officer whether he is familiar with the defendant's reputation. *Stanley v. State*, 94 Ga. App. 737 (1) (96 SE2d 195) (1956) and cits. Here, the complained-of line of questioning does implicate the concerns expressed in the *Stanley* line of cases. However, in contrast to *Stanley*, defense counsel here raised no objection to this questioning. Therefore, there was a waiver of this objection.

7. In his seventh enumeration of error, the appellant argues that the trial court erred in denying his motion to suppress certain identification testimony.

This identification testimony consists of Keith and Bridgetti O'Dells' identification of the appellant from the same photographic array, which was shown to Keith O'Dell on April 2, 1980, and to Bridgetti O'Dell the following day. The evidence as to the photographic array shows that it consisted of photographs of several individuals; that although the police informed both Keith and Bridgetti O'Dell that there was a suspect, they were not given any information concerning the identity of the suspect; and that both of the O'Dells identified the appellant after viewing the photographic array for less than 30 minutes. In addition, Keith O'Dell identified the appellant from a lineup; however, the record does not establish when the lineup was held.

(a) The appellant argues that the conduct of the lineup violated his Sixth Amendment right to counsel. However, the right to counsel in this context does not attach until after the initiation of adversarial

---

[2] The appellant also complains of testimony of the O'Dells' establishing that the appellant had been involved in "selling recently stolen property and engaged in adultery." However, the appellant does not cite to the portion of the transcript wherein this testimony is contained.

judicial criminal proceedings. *Moore v. Illinois*, 434 U. S. 220 (98 SC 458, 54 LE2d 424) (1977) and cits. Here, as previously stated, the evidence does not show when the lineup occurred. Thus, no Sixth Amendment violation has been established.

(b) The appellant also argues that the photographic array was unnecessarily suggestive. See generally *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972). Again, the evidence fails to support this assertion.

8. In his eighth enumeration of error, the appellant argues that the trial court gave an unconstitutionally burden-shifting jury instruction in charging the jury to the effect that although a person must not be presumed to act with criminal intent, the jury "may find" such intent upon a consideration of such circumstances as words, conduct, demeanor, or motive.

Such a charge is in no way unconstitutionally burden-shifting under *Sandstrom. Hance v. Zant*, 696 F2d 940, 953 (11th Cir. 1983) and cits. *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985) is clearly distinguishable.

9. In the final enumeration of error, the appellant argues that the evidence is insufficient to support the verdict. Under the criteria established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we disagree.

*Judgment affirmed. All the Justices concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, appellant argues that at the time the police interrogated him, see Division 1 (a), and at the time of the lineup at which the O'Dells identified him, see Division 7 (a), contrary to our holding adversarial judicial proceedings had commenced. Appellant bases this argument on the fact, noted for the first time on motion for reconsideration, that arrest warrants for the murder/armed robbery charges being prosecuted in this case were issued on April 3, 1980, which was some three weeks before appellant voluntarily surrendered to police on other charges.

Appellant does not cite any authority in support of his argument that adversarial judicial proceedings commence with issuance of an arrest warrant, and we reject this argument because an arrest warrant is issuable in an ex parte proceeding.

DECIDED OCTOBER 8, 1986 —
RECONSIDERATION DENIED NOVEMBER 5, 1986.

*Alice C. Stewart*, for appellant.
*Robert E. Wilson*, District Attorney, *Thomas S. Clegg*, Assistant

*District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.