### 75086. SMITH v. THE STATE.
(367 SE2d 573)

BEASLEY, Judge.

Smith was convicted as follows: Count 1 — violation of Georgia Controlled Substances Act (possession of more than an ounce of marijuana), OCGA § 16-13-30 (j) (1); Count 2 — terroristic threats (against Shirley Barkah), OCGA § 16-11-37; Count 3 — pointing a gun at another (Abdelhamid M. Barkah), OCGA § 16-11-102; Count 4 — criminal damage to property in the second degree (the car of

Hamid Barkah), OCGA § 16-7-23; and Count 5 — simple battery (against his wife Donna M. Smith), OCGA § 16-5-23. He appeals pro se, with the assistance of the public defender.

Viewing the evidence favorable to the verdict, it establishes that on August 18, 1986, Smith moved to a Days Inn due to marital difficulties partly related to his marijuana dealings. He registered under the name J. R. Ross and was given room 101, then moved to room 103. He asked his wife to bring their daughter to visit late that evening, but she did not do so. She was staying with the Barkahs, having known Mrs. Barkah since childhood. Defendant called her again the next morning, and she visited him in room 103. He told her to get a divorce, that he did not care, and that all he could do for her financially was to give her marijuana, which he did. He put two-suitcases full in her car trunk.

Mrs. Smith returned to the Barkahs, where defendant visited her twice that day. The first time he slapped her; the second time he threw her against a wall and injured her arm and back. Defendant's older son intervened, and Mrs. Smith took the child and left in her car, which still contained the suitcases. She left the car in a motel parking lot because she feared defendant would follow her and be able to spot the car. She called Mrs. Barkah, who came and took her and the child to a motel near the DeKalb police station. The police took her to the battered women's shelter.

Defendant began calling Mr. Barkah, demanding his money and his property back and to know his wife's whereabouts. Mrs. Barkah had sold marijuana in the past for defendant. She retrieved the two suitcases from Mrs. Smith's car, put them in defendant's car at her apartment, and took defendant's keys to her husband, who delivered them to defendant. At some point that day, defendant retrieved these suitcases.

Later that evening, defendant called the Barkahs and threatened them, telling Mr. Barkah that he was going to cut Mrs. Barkah into little pieces, that he was coming to prove what he was saying, and that if he was arrested for any reason he would take the Barkahs and his wife with him. Portions of these calls were recorded, including a demand that they get ". . . his s--- back for [him] or get [his wife] to get it back. . . ." They believed this reference was to the marijuana.

Defendant then went to the apartment where he kicked and hit Mr. Barkah's car with his fists and rammed it with his Blazer truck. (Mr. Barkah, who worked as a car salesman, testified it cost $2,200 to repair.) Defendant pulled a pistol and pointed it at Mr. Barkah during this exchange. The Barkahs called the police.

An officer on patrol found and arrested defendant in the early hours of August 20. He seized a .380 Colt which was on the console between the seats with a chambered bullet. Defendant was placed and

remained in the DeKalb jail.

Mrs. Barkah called an Alabama officer after defendant was arrested to report that defendant had a quantity of marijuana at the Days Inn. She told him it would be in room 103 under the name of J. R. Ross.

He called Sgt. Edenfield in DeKalb on August 21 to verify that defendant had been arrested and to place a hold on him for an Alabama charge arising from a June incident and to convey the information about the marijuana. The sergeant talked to Mrs. Barkah, who told him she thought the marijuana was in room 103, which was registered to "J. R. Potts." He called the manager at the Days Inn to see if any luggage had been found in room 103 and was told it had not.

In addition to defendant's registering in room 103 under the name of Ross, he had also registered in room 437, using the name "A.T. Hunn." Both rooms were paid for in cash for one night, August 19. It was the policy of the motel to place a "cuff" on the door of any room if after check-out time the guest had not checked out and had not paid for the next day, so the guest would have to pay the bill before re-entering the room.

Room 437 was cuffed and on August 22, no one having returned and paid for it, the manager and the housekeeper followed normal procedure and went in. Upon entering, the manager saw on the dresser a large plastic grocery bag and its contents, marijuana. He opened two suitcases which were lying on the bed and found both full of marijuana.

He called Sgt. Edenfield, who he knew to be a narcotics officer. It did not occur to him that there was any connection with the subject of the earlier inquiry. Edenfield and a detective came to the motel room, were shown the marijuana, and seized it. The detective with Edenfield opened the suitcases. They both said they had been told by the manager that the suitcases contained marijuana and that they could see marijuana in the grocery bag in plain view. A motion to suppress all of this evidence was made and denied.

1. Defendant's Enumeration 7 alleges ineffective assistance of counsel in numerous respects.

Counsel assisting defendant with his appeal was not his trial counsel. Trial counsel was retained and continued to represent defendant through his sentencing at the conclusion of the trial in March. Thereafter, defendant filed several pro se motions with the trial court. He filed no motion for new trial but rather filed a notice of appeal directly. He has vigorously pursued his appeal. While he has been assisted by the public defender on appeal, that attorney has not been appointed to represent him and appears at most only as co-counsel, although he has not filed a notice of appearance. See Ga. Const. 1983, Art. I, Sec. I, Par. XII.

Defendant argues that although there is no ruling by the trial court on the issue of effectiveness of counsel, we should nonetheless review it because the record already shows it as a matter of law.

In *Smith v. State*, 255 Ga. 654 (341 SE2d 5) (1986), the Georgia Supreme Court reiterated the rule that the issue of effectiveness of counsel is not to be addressed for the first time on appeal. Smith's counsel had been retained after trial and the filing of the motion for new trial. He filed an amendment to the motion but did not raise this issue. The Supreme Court remanded the case for a finding on the issue, stating that "[i]t is a requisite of a sound system of criminal justice, serving alike the proper ends of defendants and of the public, that any contention concerning the violation of the constitutional right of counsel should be made at the earliest practicable moment. Thus we remand the case to the trial court for a hearing and appropriate findings concerning the issue of ineffective assistance of counsel." *Smith* at 656.

Since the publication of *Thompson v. State*, 257 Ga. 386 (359 SE2d 664) (1987) last November 5, any claim of ineffective assistance of counsel which is not raised in a motion for new trial filed by new counsel is deemed waived.

We are unable to tell when the public defender began assisting defendant. What is clear, however, is that defendant, either alone or with the public defender's assistance, has consciously chosen not to raise the issue of effectiveness of counsel below so that the trial judge could entertain evidence and make a ruling.

"Appellate courts review enumerations for correction of errors of law committed by the trial court — where motions or objections are properly presented for a ruling by the trial court. [Cit.] Enumerated errors which raise issues for the first time . . . on appeal present nothing for review. [Cit.]" *Fowler v. State*, 155 Ga. App. 76 (2) (270 SE2d 297) (1980); see *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8) (1976) cert. denied, 428 U. S. 874, reh. denied, 429 U. S. 879.

Because defendant acting as his own counsel opted not to present this question to the trial court, saying it was not necessary, he has presented no ruling by it for us to review. He asks us to review errors of trial *counsel*, but our function is to review alleged legal errors of the trial *court*. True, trial counsel errors may be material to our consideration of a court ruling in regard to their showing ineffectiveness, but we do not *originally* decide their legality.

Had this case come to us after the publication of *Thompson*, the issue would be regarded as waived. However, since this case was filed and briefed before that opinion, we are constrained to remand this case for the trial court to determine the issue. *Lloyd v. State*, 257 Ga. 108 (3) (355 SE2d 423) (1987); *Hambrick v. State*, 256 Ga. 148, 151 (5) (344 SE2d 639) (1986); *Smith v. State*, 255 Ga. 654 (341 SE2d 5)

(1986); *Midura v. State*, 183 Ga. App. 523, 524 (3) (359 SE2d 416) (1987).

2. Enumeration 1 claims error in the trial court's denial of defendant's motion to sever the marijuana charge from the others, contending that the former did not arise from the same transaction or occurrence and was not connected with the latter.

OCGA § 16-1-7 provides in sections (b) and (c) that all crimes arising from the same conduct, known to the prosecutor and within the jurisdiction of a single court, must be prosecuted in a single prosecution. If they are properly joined, the court in the interest of justice may order one or more of the charges tried separately.

Since the crimes joined here were not of a similar kind, the inquiry is whether, applying the standard adopted in *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975), they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. "It is not an abuse of discretion in the interest of justice for the judge to refuse a motion for severance of the trial of multiple charges where the crimes alleged were part of a continuous transaction conducted over a relatively short time, and '. . . from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other . . .' [Cit.]" *Stewart v. State*, 239 Ga. 588, 589 (3) (238 SE2d 540) (1977). The court should consider whether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense. *Adams v. State*, 178 Ga. App. 261 (1) (342 SE2d 747) (1986).

Although the indictment alleged possession on August 22 when the marijuana was discovered by the police, defendant had been in jail since the morning of August 20, and the evidence showed that he was in possession of the suitcases containing the marijuana on August 18 and 19. While the battery of his wife may have arisen from domestic problems, they stemmed at least in part from defendant's marijuana dealings. Also, the marijuana was apparently offered to Mrs. Smith as a financial settlement of the domestic dispute and then defendant changed his mind, demanding its return from the Barkahs. The threats against the Barkahs demanded the return of defendant's property and money. While defendant might explain that "property" did not encompass the marijuana, the trial judge's conclusion that it included the marijuana was founded, and the denial of the severance motion was not an abuse of discretion.

Defendant relies on *Thompson v. State*, 181 Ga. App. 163 (351 SE2d 483) (1986). It involved counts of incest with one stepdaughter and sexual molestation of another over a period of years, plus two counts of aggravated assault against his wife and one against a step-

daughter. The assaults all occurred over a three-day period. The State's theory was that by demonstrating defendant's violent disposition, the shooting incidents tended to support the children's testimony that their failure to report the sexual abuse was due to fear. The court rejected this rationale because the shootings occurred only two months before the children did report the abuse, which had been going on for years. The court noted that no other relevant connection was offered.

Here, the purpose of joinder was not to bolster any witness' credibility, as in *Thompson*. Instead there was a rational connection, shown by the evidence, between the battery, terroristic threats, and damage to property on the one hand and defendant's possession of marijuana on the other. *Eady v. State*, 182 Ga. App. 293, 296 (4) (355 SE2d 778) (1987); *Adams v. State*, 178 Ga. App. 261 (1) (342 SE2d 747) (1986); see *Spradlin v. State*, 174 Ga. App. 658 (1) (331 SE2d 50) (1985).

3. Enumeration 2 claims error in the trial court's denial of the motion to suppress the marijuana and the test report on it.

The argument discusses the prescription pill bottle removed from the small shoulder bag by the officers, but that is not enumerated as error. We have " 'no jurisdiction to consider grounds which, though argued are not enumerated according to [OCGA § 5-6-40].' [Cit.]" *Slaughter v. Linder*, 122 Ga. App. 144, 148 (2c) (176 SE2d 450) (1970); *Meeks v. State*, 178 Ga. App. 9, 14 (4) (341 SE2d 880) (1986).

Although the order denying the motion refers to a hearing and evidence received, there is no transcript or narrative in the record. We therefore examine the trial evidence and defendant's affidavit submitted in support of the motion. *Sanders v. State*, 235 Ga. 425, 431 (II) (219 SE2d 768) (1975); *Johnson v. State*, 143 Ga. App. 826 (237 SE2d 229) (1977).

Defendant argues vigorously that he had not abandoned the room and luggage and that the only reason that he had not paid the rent was that he was in jail. He overlooks several pertinent facts: the room in which the marijuana was found was not registered in his name but in the apparently fictitious name of "Hunn." The room was "cuffed" by the motel, which would have accepted rent if someone had come to pay it and retrieve the luggage. When the manager searched the room pursuant to motel normal procedure, he deemed the property abandoned. Devoid of evidentiary support is defendant's argument that Detective Edenfield knew room 437 was really defendant's and that the search by the manager was conducted as Edenfield's agent. The manager testified that he made no connection between Edenfield's request, for him to check room 103, and his own entry into room 437.

In his motion before the trial court, defendant asserted his rights

under the federal Fourth Amendment and under Ga. Const., Art. I, Sec. I, Par. XIII. Here, however, he argues only his rights under the federal Fourth Amendment, so the other is considered abandoned. *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1a) (275 SE2d 142) (1980).

The federally-founded protection and that afforded by the associated exclusionary rule are against invasions of reasonable expectations of privacy by state action and, with regard to the exclusionary rule, state law enforcement action. *State v. Young*, 234 Ga. 488, 489 (1) (216 SE2d 586) (1975) cert. denied, 423 U. S. 1039.

Defendant complains of two searches: room 437 and the suitcases.

(a) The initial entry into the room was made by the manager, a private citizen, and was not prohibited by the Fourth Amendment. *Morton v. State*, 181 Ga. App. 781, 783 (2) (353 SE2d 852) (1987). Abandonment does not turn on strict property concepts but on whether defendant had relinquished his interest so that he no longer had a reasonable expectation of privacy in the premises at the time of the search. *Bloodworth v. State*, 233 Ga. 589, 590 (2) (212 SE2d 774) (1975). The manager, following normal procedure, entered the room because rent had not been paid for two days. His conclusion that the room had been abandoned was reasonable. *Buttrum v. State*, 249 Ga. 652, 653 (2) (293 SE2d 334) (1982) cert. denied, 460 U. S. 1048; *Morton*, supra.

Upon entering the room, he found the grocery sack with marijuana in plain sight and thereafter opened the suitcases and discovered more marijuana. He called the police and allowed them in. It was reasonably apparent to them that the prior occupant had abandoned the premises, so the manager's invitation obviated the need for a warrant to authorize the officers' entry. *Buttrum*, supra; *Bloodworth*, supra. Once inside, their seeing marijuana in the grocery sack in plain view authorized its seizure. See *Griffin v. State*, 180 Ga. App. 189 (348 SE2d 577) (1986).

The charge was possession of more than an ounce of marijuana. The grocery bag contained this quantity, which alone justifies denial of the motion to suppress as to that charge. Because of the large amount found in the suitcases and the possible effect of this evidence on the jury, we address also the issue as to it.

(b) Defendant acknowledges that the initial search of the suitcases was conducted by the manager but argues that he was acting as the State's agent. The manager testified that he made no connection between the call regarding room 103 and his subsequent entry into room 437, and that no rent having been paid for room 437, his search of the luggage for identification was standard procedure. This does not mandate a conclusion that the manager was the agent of the State. *Morton*, supra at 783.

4. In Enumeration 3, defendant complains of the denial of his motion in limine concerning a June incident in Alabama. Prior to trial, the state gave notice under USCR 31.3 of intent to introduce a similar crime relating to the marijuana charge. Defendant filed a motion in limine to exclude this evidence as improperly placing his character in issue.

At the motion hearing, the evidence was that on June 14, 1986, defendant took five pounds of marijuana to his nephew in Alabama at the nephew's request. The nephew said he was "fronted" the marijuana to sell and then pay defendant. Defendant's brother-in-law found the marijuana and called the police, who came and confiscated three pounds. Defendant and his wife had been unable to get all the marijuana to the nephew due to his parents' presence and were returning to do that when they saw the police car. Defendant disposed of the remainder by placing it in a dumpster and called another relative to request its retrieval. The police were called and they seized two pound bags from the dumpster.

The trial court ruled that the transaction with the nephew was admissible but granted the motion with regard to testimony as to the material found in the dumpster.

Citing *Duke v. State*, 256 Ga. 671 (352 SE2d 561) (1987), defendant argues that the June incident was not relevant to the charge on trial nor admissible for any other purpose and should have been totally excluded. Below, defendant argued that the two-month time lapse made the one irrelevant to the other and that the State's only purpose in introducing the evidence was to inflame the jury.

The State, on the other hand, argues that the incident was similar and properly admissible pursuant to *State v. Johnson*, 246 Ga. App. 654, 655 (1) (272 SE2d 321) (1980). The State further argued that the incident was part of the *res gestae* of the Georgia incident because it was one of the precipitating factors of the marital discord leading to the charged crimes, plus that it led to defendant's arrest in Georgia.

Similarity of the charged crime and the like act has been the focus of many cases, but it is "not the only factor, nor is it necessarily the controlling factor. 'The ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but *relevance to the issues in the trial of the case.*' [Cits.] *Depending upon the purpose for which the extrinsic offense is offered, 'the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar.* [Cits.]' " *Felker v. State*, 252 Ga. 351, 359 (1 a) (314 SE2d 621) (1984), quoted in *Henderson v. State*, 182 Ga. App. 513, 516 (2) (356 SE2d 241) (1987), aff'd in part and

rev'd in part on other grounds, 257 Ga. 618 (362 SE2d 346) (1988).

Either basis is available as a ground for allowing the Alabama incident in. There is no dispute that defendant was the perpetrator of that crime. His nephew, his brother-in-law, and his wife identified him. The crime was similar, involving five pounds of marijuana packaged in one-pound plastic bags within a shopping bag. The Georgia incident involved nineteen pounds, part of which was packaged in plastic baggies contained in a grocery shopping bag. The issue on trial was whether it was defendant's marijuana. The similarities with the Alabama crime tended to prove that it was. *Sablon v. State*, 182 Ga. App. 128, 130 (2) (355 SE2d 88) (1987). Also, the incident was logically connected to and a part of the charged crime, explaining the controversy between defendant and his wife and his conflict with the Barkahs. *Henderson*, supra.

*Duke* is inapposite. Duke was accused of murder. She gave a statement to the police in which she denied being sexually involved with the victim and stated that her only sexual relationship was with another man. It was this portion of the statement to which she objected and which was found irrelevant.

5. In Enumeration 4, defendant claims error by the trial court's allowing into evidence thirteen similar crimes in the absence of notice pursuant to USCR 31.3. Testimony about one of these incidents was elicited in response to a question by defense counsel, three related to the Alabama incident which the court ruled admissible, and no objection was voiced by defendant to those remaining, all but one of which related to his alleged drug dealing. The last was the statement by his wife that on August 18, when defendant called her to come to the Days Inn, the reason he gave was that someone owed him money and that if he did not pay him, he was going to shoot the debtor.

Several obstacles waylay this claim. For one, "[i]nduced error is impermissible." *Edwards v. State*, 235 Ga. 603, 604 (2) (221 SE2d 28) (1975); *Farmer v. State*, 180 Ga. App. 720, 722 (5) (350 SE2d 583) (1986). For another, "[a]ppellate courts review enumerations for correction of errors of law committed by the trial court — where motions or objections are properly presented for a ruling by the trial court. [Cit.] Enumerated errors which raise issues for the first time . . . on appeal present nothing for review. [Cit.]" *Fowler v. State*, 155 Ga. App. 76 (2) (270 SE2d 297) (1980); see *Pulliam v. State*, 236 Ga. 460, 465, supra; *Sharp v. State*, 183 Ga. App. 641, 643 (4) (360 SE2d 50) (1987).

6. Enumerations 5, 8, and 9 claim error in the court's failure to give limiting instructions concerning the other crimes at the time they were introduced, citing *Head v. State*, 253 Ga. 429 (322 SE2d 228) (1984); that the charge given by the court at the close of evidence was inadequate concerning "like acts"; and that the court failed to in-

struct the jury *sua sponte* that it should disregard testimony of defendant's general character.

Defendant urges that, although no objection to the introduction of these incidents was made, the trial judge was nevertheless required to give limiting instructions each time such a reference occurred. *Head* does not so hold. The charges there were armed robbery and possession of a firearm by a felon. One of the prior convictions introduced was for armed robbery, and the primary issue was whether the charges should have been severed. The court criticized the lower court's failure to limit the purpose for which the prior convictions were introduced, i.e., as an element of one of the crimes. Here, as acknowledged by defendant in Enumeration 8, the court did give a limiting charge.

As to the charge's adequacy, defendant waived the point because he made no objection, although specifically asked if there was any, and he did not reserve the right to make objections later. *Sharp*, supra at 643. We do not find substantial error as defined in OCGA § 5-5-24 (c).

*Barnett v. State*, 178 Ga. App. 685 (344 SE2d 665) (1986) is not persuasive. There, in addition to the fact that no objection was made by defendant to the evidence or the charge, the evidence of sexual and physical child abuse and neglect were totally extraneous to the assault-against-an-officer charge for which defendant was being tried. Here, the Alabama incident was properly allowed into evidence, the charged incident was a marijuana charge, and one of the now objected-to incidents was elicited by defendant. A waiver of the right not to have his character placed into evidence occurred. See *Rich v. State*, 254 Ga. 11, 14 (1) (325 SE2d 761) (1985).

7. In Enumeration 6, defendant seeks reversal pursuant to his contention that the trial court failed to perform its duty under OCGA § 17-8-75, in that the prosecution violated the court's order prohibiting the State from introducing evidence concerning the marijuana in the dumpster.

Defendant is correct that his wife testified concerning defendant's dumping the bag into the dumpster, but this came in response to the following question: "Now, after that particular incident, and after the Burroughs [defendant's brother and sister-in-law] called the police on that, [referring to the delivery of marijuana to Jonathan, ruled admissible by the court] what was the status of your relationship with your husband?" Mrs. Smith related in detail her husband's decision to return and deliver the remaining marijuana to Jonathan and the ultimate disposal of it. The State followed up by asking if she was present when it was disposed of and where it was disposed of.

In asking the question which first elicited the complained-of testimony, the State did not violate either the order or USCR 31.3.

There is no indication that the State expected this to be the response to the initial question asked. Defendant did not object, move to strike, request instructions, or move for mistrial. He may not allow evidence to be introduced and then demand reversal.

OCGA § 17-8-75 specifically prohibits statements by the prosecutor of prejudicial matters which are not in evidence, and also prohibits statements of a prosecutor's personal belief in the guilt of the accused, even if phrased in the form of a question. *Castell v. State*, 250 Ga. 776, 789 (8) (301 SE2d 234) (1983). Neither of these situations is present here.

As reflected in *Stanley v. State*, 94 Ga. App. 737 (1) (96 SE2d 195) (1956) and *Brown v. State*, 118 Ga. App. 617 (165 SE2d 185) (1968), cited by defendant, the improper insertion of a defendant's character into evidence by a prosecutor is grounds for a motion for mistrial, and if the mistrial is denied, the court has an obligation to instruct the jury that the defendant's character is not in issue. Defendant, however, must object to such questioning or any objection is waived. *Ford v. State*, 256 Ga. 375, 381 (6) (349 SE2d 361) (1986); *Wright v. State*, 253 Ga. 1, 4 (3) (316 SE2d 445) (1984); *Gaines v. State*, 179 Ga. App. 623, 625 (2) (347 SE2d 673) (1986).

8. Enumerations 10 and 11 deal with sentencing, defendant contending that improper matters were considered and that he was sentenced beyond the statutory maximums for the possession count and the terroristic threat count.

The State concedes that he was sentenced to more than the statutory maximum, and the case is remanded also for resentencing according to law. The remaining contention need not be considered.

*Judgment affirmed as to convictions on all counts and as to sentences on Counts 3, 4 and 5; sentences on Counts 1 and 2 vacated; case remanded for rehearing as directed in Division 1 and for resentencing as directed in Division 8. McMurray, P. J., and Sognier, J., concur.*

DECIDED MARCH 11, 1988.

Franklin D. Smith, *pro se.*
*Carl Greenberg*, for appellant.
*Robert E. Wilson, District Attorney, Barbara Conroy, Nelly Withers, Assistant District Attorneys*, for appellee.