A05A0621. McKINNEY v. THE STATE.

(619 SE2d 299)

BERNES, Judge.

A Cherokee County jury convicted appellant James Ray McKinney of attempted armed robbery, burglary, kidnapping, terroristic threats, and possession of a firearm during the commission of certain crimes. McKinney appeals alleging ineffective assistance of counsel; error in the trial court's limitation of his cross-examination of a state's witness; and error in the trial court's failure to merge all of the other offenses into the attempted armed robbery. We find McKinney's enumerations of error to be without merit and, therefore, affirm.

Viewed in the light most favorable to the verdict, the record reflects that on May 21, 2001, the three victims, Jeremiah Miller, Jesse Green and Bill Wilson, were playing billiards ("pool") in the basement of Miller's residence in Cherokee County. There was a knock on the door and Wilson went upstairs to respond. McKinney stood outside the door and asked to enter the residence so he could perform a free inspection of the air conditioning system. Wilson declined the service, indicated that the homeowner was not there, and closed the door. Approximately five minutes later, McKinney knocked on the door again. While Miller went upstairs, Wilson answered the door again. This time, McKinney asked to leave a

business card. However, instead of retrieving a business card, McKinney pulled out a gun from the hollow cavity of his clipboard. McKinney pointed the gun at Wilson, and told him to get on the floor.

While McKinney forced his way into the residence, Miller hid under his son's bed and called 911 from his cell phone. Shortly thereafter, McKinney's brother and co-defendant, Onshea McKinney, entered the residence armed with his gun. McKinney and his brother retrieved Green from the basement and made him lie on the floor next to Wilson. The two brothers then forced Green and Wilson at gunpoint to follow them from room to room in search for valuables. McKinney also searched for Miller and threatened to "blow [Wilson's] head off" if he did not tell where Miller had gone.

The police arrived at the residence and found McKinney and his brother standing on the back porch. McKinney and his brother identified themselves as heating and air conditioning repair men. The police instructed McKinney and his brother to come out the front door. The two brothers went back in the house and McKinney told Wilson and Green that if they did not cover for them in their statements to the police, "they had people out there that would take care of [them]." Everyone exited the house at which time they all were handcuffed, separated and interviewed so the police could ascertain who of those present were victims and who were perpetrators. McKinney and his brother were ultimately arrested at the scene.

The police did not discover any handguns on either McKinney or his brother. When the police indicated they wanted to search Miller's residence for the handguns, Miller refused to authorize their entry until his attorney arrived. After waiting several hours, the police obtained a search warrant. Drugs were found in the basement of the residence during the police search, but no handguns were located at that time.[1] The next morning, Miller found the handguns in the bottom of his sock drawer when he went to get dressed.

1. McKinney contends that his trial counsel rendered ineffective assistance by failing to exercise a peremptory strike to remove Judge Alan Jordan, a sitting Cherokee County State Court judge, from the jury panel. Judge Jordan had presided over a speeding case in which McKinney had pled guilty. To prevail on this claim, McKinney must show that his trial counsel's performance was deficient and that his defense was prejudiced due to the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). There is a "strong presumption that the lawyer's performance falls

---

[1] Green later admitted the drugs belonged to him. He was prosecuted and convicted of charges relating to his possession of the drugs.

within the wide range of reasonable professional assistance." (Citation omitted.) *Phillips v. State*, 277 Ga. 161 (587 SE2d 45) (2003). On appeal, we must uphold the trial court's finding that the appellant failed to rebut the presumption of effectiveness unless it is clearly erroneous. *Doctor v. State*, 275 Ga. 612, 614 (5) (571 SE2d 347) (2002).

The record shows that McKinney was present during voir dire and jury selection. However, he failed to inform his trial counsel that Judge Jordan had presided over the prior case and that he objected to his service until after the jury had already been selected. He remained silent until immediately before the trial judge's administration of the juror oath and the beginning of opening statements.[2]

"It is well established that one cannot complain of [an error] that his own trial tactics or conduct procured or aided in causing." (Citation and punctuation omitted.) *Sweeney v. State*, 233 Ga. App. 862, 865 (4) (506 SE2d 150) (1998). "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." (Citations and footnotes omitted.) *Gordon v. State*, 252 Ga. App. 133, 135 (2) (555 SE2d 793) (2001). McKinney cannot now complain of an alleged deficiency by counsel that was caused by his own silence and failure to timely provide information. Id.; *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000). Cf. *Miller v. State*, 233 Ga. App. 814, 815 (1) (506 SE2d 136) (1998) ("The disqualification of a juror may be expressly or impliedly waived by a party having cause to complain, ... and where it appears that the party having cause to complain knew of the relationship and remained silent, that party will be presumed to have waived the disqualification.") (citation and punctuation omitted).

McKinney correctly notes that at one point, trial counsel had intended to exercise a strike on Judge Jordan and that when Judge Jordan was reached, defense counsel was out of strikes. He contends that trial counsel failed to keep up with the number of strikes being exercised and, thus, negligently failed to preserve a strike for Judge

---

[2] Upon being informed, McKinney's trial counsel was allowed to conduct further questioning of Judge Jordan. Judge Jordan responded that he had no independent recollection of having any prior matters involving either defendant. Judge Jordan further affirmed that he could remain unbiased in hearing the evidence and in determining the issues. Based upon Judge Jordan's responses to this further questioning, the trial court allowed him to remain on the jury and there was no request that he be excused for cause. See *Phillips*, supra at 162 (a) (When the questioning of a juror reveals that the juror "[does] not display a definite and fixed opinion regarding the guilt or innocence of defendant, nor [that the juror has] an inability or unwillingness to listen to the evidence, apply the law, deliberate with fellow jurors and/or reach a verdict," there is no basis for trial counsel to challenge the juror for cause.). See also *Jackson v. State*, 202 Ga. App. 223, 224 (414 SE2d 262) (1991) (where this court held that there is no presumption of bias or disadvantage if a judge is impaneled as a juror).

Jordan. However, both McKinney's trial counsel and his co-defendant's counsel confirmed that they coordinated their use of peremptory strikes and prior to exhausting their strikes, made a tactical decision to strike other jurors whom they found more objectionable. Thus, the failure to strike Judge Jordan was not the result of trial counsel's alleged deficiency. The trial court's finding as to counsel's effectiveness was not clearly erroneous. See *Doctor*, supra at 614 (5) (b).

2. McKinney further contends that the trial court erred by prohibiting the cross-examination of Investigator Preston Peavy as to how he knew that the drugs found in the residence belonged to victim Green. However, the transcript reflects that the sustained objection to which McKinney cites was directed at a different inquiry.[3] The relevant portion of the transcript reads as follows:

> Q. All right. When you located these drugs and prior to you locating these drugs, you mentioned in your police report on page three, if you want to look at that —
> A. (Interposing) Okay.
> Q. — so we're on the same page — that you had first talked to Mr. Green about these drugs and he denied that they were his. That's in the paragraph underneath paragraph two on that page, near the end of the paragraph there.
> A. Okay. You're talking about page four actually. It's actually page four.
>
> . . . .
>
> Q. So you asked Mr. Green prior to Mr. Miller talking to him and he denied that those were his drugs?
> MR. POOLE: Your Honor, I'm going to object to any hearsay.

After hearing argument from both defense counsel, the trial court sustained the objection.[4]

---

[3] As previously noted, other evidence at trial established that Green accepted responsibility for the drugs.

[4] The subject question propounded by co-defendant's counsel required Investigator Peavy to testify about what Green told him about the drugs found in the basement on the day of the incident. Green was not present to testify as a witness at trial and there could be no cross-examination of Green on this subject. Even if the State elicited some of the same testimony on direct examination without objection, the statement sought on cross-examination is considered hearsay under OCGA § 24-3-1. "As the right to a thorough and sifting cross-examination does not include the right to elicit hearsay, the court did not err in sustaining the State's hearsay objection." (Footnotes omitted.) *Roseberry v. State*, 251 Ga. App. 856, 857-858 (2) (554 SE2d 816) (2001).

Careful review of the record reveals that the sought after information was elicited prior to the sustaining of the objection. In the initial questioning on the issue, Investigator Peavy referenced the correct page of the police report and confirmed Green's initial denial of having the drugs. Since other evidence of the same fact was admitted without objection, McKinney was not harmed by the trial court's ruling. See *Moreland v. State*, 263 Ga. App. 585, 587-588 (2) (588 SE2d 785) (2003) ("Exclusion of evidence is wholly harmless where other evidence of the same facts was introduced and admitted.") (citation and punctuation omitted); *Wills v. State*, 169 Ga. App. 260, 261-262 (3) (312 SE2d 367) (1983) ("Cross-examination may be curtailed if the subject matter is repetitious," and there is no error absent a showing of prejudice by exclusion of the evidence.) (citation omitted).

3. McKinney contends that his convictions on all the crimes of which he was convicted should have merged with the attempted armed robbery as a matter of fact since these crimes constituted substantial steps toward committing the attempted armed robbery.

> [T]he key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge.

(Punctuation and footnote omitted.) *Smith v. State*, 250 Ga. App. 465, 466-467 (1) (552 SE2d 468) (2001).

McKinney was indicted for armed robbery. However, he requested a jury charge on the lesser included offense of attempt, and ultimately was convicted of attempted armed robbery. The indictment consequently did not allege specific acts constituting a substantial step toward commission of the offense and McKinney did not request that the jury specify what act(s) constituted a substantial step in reaching the verdict.[5]

> To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to

---

[5] Again, "[i]t is well established that one cannot complain of [an error] that his own trial tactics or conduct procured or aided in causing." (Citation and punctuation omitted.) *Sweeney*, supra at 865 (4). To the extent that this alleged error was procured by McKinney's trial tactics of requesting a charge on attempted armed robbery without further requesting a determination as to which acts constituted substantial steps toward commission of the crime, he cannot be heard to complain in this enumeration.

the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. . . . The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial. In addition to assuring firmness of criminal purpose, the requirement of a substantial step will remove very remote preparatory acts from the ambit of attempt liability and the relatively stringent sanctions imposed for attempts.

(Footnote omitted.) *New v. State*, 270 Ga. App. 341, 343 (1) (606 SE2d 865) (2004), quoting *Adams v. State*, 178 Ga. App. 261, 263 (2) (b) (342 SE2d 747) (1986). See also *Howell v. State*, 157 Ga. App. 451, 454-457 (4) (278 SE2d 43) (1981).

In this case, it may be inferred that the actions taken by McKinney *before* he physically entered the residence constituted the substantial steps toward commission of the armed robbery. The evidence reflected that McKinney discussed with his co-worker the idea to dress up as a heating and air technician to perform a robbery; that he and his brother/co-defendant traveled to the residence armed with handguns and a hollow clipboard used to conceal his handgun; and that he pointed the handgun at Wilson before he forced his way into the house. These were direct acts toward consummation of McKinney's design, and were the only acts necessary to complete the crime of attempted armed robbery.[6] See *Adams*, supra at 263 (2) (b) (Substantial steps were defendants' acts of discussing the method by which he intended to commit armed robbery, and traveling to the hotel location armed with handguns and stocking masks before being apprehended by the police.); *New*, supra at 343 (1) (Substantial steps toward the commission of armed robbery occurred when the defendant went to the McDonald's location armed with a handgun, wore a mask covering his face, watched a group of people, and drew his handgun when confronted by the officer.); *Gaither v. Cannida*, 258 Ga. 557, 558 (1) (372 SE2d 429) (1988) (Evidence authorized the

---

[6] The indictment also charged McKinney with aggravated assault in that he pointed a handgun at the victims. Since pointing the handgun at Wilson also was a substantial step toward commission of the armed robbery, the trial court was authorized to merge the aggravated assault conviction with the attempted armed robbery conviction. See OCGA §§ 16-1-7 (a); 16-4-1; 16-5-21. See also *Hambrick v. State*, 256 Ga. 148, 150-151 (4) (344 SE2d 639) (1986).

defendant's conviction for attempted armed robbery when he traveled to the store with his co-defendants armed with weapons and entered the store armed with a shotgun.). Under these circumstances, the attempted armed robbery was complete before the commission of McKinney's crimes inside the residence. As such, these later, additional crimes did not merge with the attempted armed robbery. See OCGA §§ 16-4-1; 16-7-1; 16-5-40; 16-5-41; 16-11-37. See, e.g., *Skaggs-Ferrell v. State*, 266 Ga. App. 248, 251-252 (5) (596 SE2d 743) (2004); *Sharp v. State*, 255 Ga. App. 485, 487 (1) (565 SE2d 841) (2002); *Smith*, supra at 466-467 (1).

Moreover, as a matter of law, possession of a firearm during the commission of a felony does not merge with the predicate felony. The crime of possession of a firearm is considered to be a separate offense requiring a sentence of confinement for a period of five years to run consecutively to any other sentence. OCGA § 16-11-106 (b), (e); *State v. Marlowe*, 277 Ga. 383, 384-385 (2) (a) (589 SE2d 69) (2003). Accordingly, the trial court was correct in failing to merge McKinney's crimes of burglary, kidnapping, terroristic threats, and possession of a firearm during the commission of a certain felony with the attempted armed robbery offense in this case.[7]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 24, 2005.

*Joe W. Hendricks, Jr., Mathew A. Baker*, for appellant.
*Garry T. Moss, District Attorney, Scott T. Poole, Assistant District Attorney*, for appellee.

---

[7] McKinney was also found guilty of several other offenses which the trial court merged into the offenses on which judgments of conviction were entered.