27202.   McRAE *v.* WILBY, executrix.

DECIDED JANUARY 30, 1939.

*Clifford Hendrix, Hendrix & Buchanan,* for plaintiff in error. *Little, Powell, Reid & Goldstein, James K. Rankin,* contra.

SUTTON, J. ■ The issue presented in the general grounds of the motion for new trial is whether or not the jury was authorized to find that the note introduced in evidence as having been executed by Wilby to McRae did not bear his genuine signature. Several witnesses, familiar with Wilby's signature, identified his signature on numerous checks introduced in evidence, and testified that in their opinion Wilby signed the note in question. The defendant and J. E. Eagle, his office clerk, testified that they saw Wilby sign the note. Eagle stated that Wilby, while at McRae's place of business in Salisbury, North Carolina, called to him in an adjoining office to come in and prepare the note, that it was worded exactly as directed by Wilby, and signed by him with a pen furnished by Eagle. The plaintiff identified Wilby's signature on a number of checks. As to six others she testified that she "did not like these." As to the signature on the note she testified: "It is my opinion that the note does not contain the genuine signature of Mr. Wilby. I do not even recognize the existence of it, and I don't recognize it as Mr. Wilby's signature. Yes, it is most similar to his signature. I was not able to find in the records or papers of

Mr. Wilby any connection with this document or record or entry that in any way referred to him having an outstanding note of $3000. I did not find among the papers any letter wherein payment of this $3000 note was demanded." The testimony of the witnesses other than the defendant and his clerk being only opinionative, the jury was at liberty to accept Mrs. Wilby's opinion of the signature in preference to that of the others. The testimony of McRae and Eagle was not merely opinionative; it was direct and positive. If they are to be believed, they saw Wilby sign the note, and thus overcame the charge of forgery set up by the plaintiff in her replication. It is contended by the plaintiff in error that the uncontradicted testimony of these two can not be disproved by the circumstantial evidence of the case. It is equally contended by the defendant in error that such evidence makes the note-swapping theory unworthy of belief, discredits the direct testimony of McRae and Eagle, and that the verdict rendered by the jury was the only reasonable one that could have been rendered under the law and the evidence.

How stands the law in respect to the uncontradicted testimony of the defendant and his clerk? Undoubtedly, in the case of unimpeached disinterested witnesses, it is clear that their direct and uncontradicted testimony can not be overcome by circumstantial evidence which is consistent with such testimony. As was held in *Frazier* v. *Georgia Railroad & Banking Co.*, 108 *Ga.* 807 (33 S. E. 996), "When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when, by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." See also *Taggart* v. *Savannah Gas Co.*, 179 *Ga.* 181 (175 S. E. 491); *Griffin* v. *Barrett*, 183 *Ga.* 152, 165 (187 S. E. 828); *Neill* v. *Hill*, 32 *Ga. App.* 381, 382 (123 S. E. 30); *Emory University* v. *Bliss*, 35 *Ga. App.* 752 (134 S. E. 637). In *Neill* v. *Hill*, supra, it was also held: "The testimony of witnesses who swear positively, and are not otherwise impeached or discredited, should not be discarded merely because they are related to

the party in whose behalf they testify, although it is proper for the jury to consider such relationship *when there is other matter by reason of which they may legitimately question the credibility of the testimony.* [Citing.]" (Italics ours.) A fact can be proved by circumstantial evidence as well as by direct proof, and physical facts and circumstances may be sufficient to authorize the jury to disbelieve the witnesses of a party and to thereby impeach them. *Atlantic and Birmingham Railway Co.* v. *Clute,* 3 *Ga. App.* 508 (60 S. E. 277); *Emory University* v. *Bliss,* supra; *Central of Georgia Ry. Co.* v. *Grace,* 46 *Ga. App.* 101, 102 (166 S. E. 684). "Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto." *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256, 261 (175 S. E. 577).

But the only witnesses who swore that they *saw* Wilby sign the note in question are M. C. McRae, the defendant, and J. E. Eagle, and they are not such as can be termed disinterested witnesses. McRae was a party. Eagle was his employee, in close association with him in the office. On the subject of the right of the jury to discredit a party's testimony from the fact of interest, irrespective of other impeachment or attack, it was said in *Armstrong* v. *Ballew,* 118 *Ga.* 168, 170 (44 S. E. 996): "In *Laramore* v. *Minish,* 43 *Ga.* 282, Chief Justice Lochrane, in discussing the act making parties competent witnesses, said: 'We think, under a proper construction of this law, that witnesses introduced under its provisions are lifted out of the general rule, and that the jury may exercise their *judgment* on the credit of such witnesses from the *fact of their interest,* irrespective of other impeachment or attack.' Only two Judges presided in that case; but in *Penny* v. *Vincent,* 49 *Ga.* 473, which was decided by a full bench, what was said by Chief Justice Lochrane in *Laramore* v. *Minish* was approvingly quoted, and it was held that under the act of 1866 juries have a larger discretion as to the credit which they will give parties testifying than in the case of witnesses testifying who are not parties. Trippe, J., delivering the opinion, said: 'With all this power, a jury should not capriciously discredit a witness or reject his testimony; but if there be in evidence any circumstances or facts in conflict with the testimony of a party to the suit, . . and the

point be directly made to the jury as to what credit shall be given to his testimony, and they deliberately decide to reject it, and the judge trying the case, who, with the jury, both see and hear the party testify, refuses to interfere, we do not think a case is made to demand our intervention." Again, "The rule that the uncontradicted testimony of unimpeached witnesses can not lawfully be arbitrarily disregarded 'does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness.' *Wilson* v. *Gray*, 34 *Ga. App*. 320 (129 S. E. 297)." *Fincher* v. *Harlow*, 56 *Ga. App*: 578, 581 (193. S. E. 452). "The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness." *Detwiler* v. *Cox*, 120 *Ga.* 638 (48 S. E. 142). "The fact that a witness is an employee of one of the parties is a proper matter to be considered by the jury in passing upon his credibility.". *Central of Georgia Railway Co.* v. *Bagley*, 121 *Ga.* 781 (4) (49 S. E. 780). See also *Central Railroad &c.* v. *Maltsby*, 90 *Ga.* 630 (16 S. E. 953).

The law above set forth clearly establishes the right of the jury to discredit the direct and positive testimony of McRae and Eagle if the circumstantial evidence in the present case could reasonably be said to be inconsistent therewith. While it could not be said that a finding in that respect was demanded as a matter of law, we think that the jury was authorized to so find and by that judgment to impeach the testimony of McRae and Eagle. As to the testimony of McRae, could it be said that the jury could not find it to be inconsistent with the following? The statement to plaintiff's counsel on his first visit to Salisbury, North Carolina, that he had personally filled in with ink the note bearing the purported signature of Wilby, whereas on the trial of the case his testimony related to a note which had been filled in by typewriter; the statement that the two notes were prepared at the same time in a hotel in Salisbury and where upon introduction of the notes they did not carry similar expressions, as might be expected when one person draws both notes, but the note admittedly signed by McRae was

made payable to "R. G. Wilby" and due "one year" after date, whereas the one alleged to have been signed by Wilby was made payable to "M. C. McRae and heirs" and due "on demand one year" after date; the fact that, though McRae claimed that in receiving the $3000 from Wilby he was acting for Georgia Cypress Company, the money was not credited to Wilby by the company at the time it was turned over to the company by McRae, and was shown to be an amount due Wilby only when, after the company had filed a petition in bankruptcy, it had thereafter amended its schedule of amounts due creditors by deducting from the amount set up as due McRae the sum of $3000 which it then set up as due Wilby, this change being made by the company, in which McRae owned 60 per cent. of the stock and his brother owned 20 per cent. of the stock, in May, 1935, at a time when Wilby was on his death bed; the fact that on the first visit of plaintiff's counsel to Salisbury McRae did not promptly mention, as a defense to the $3000 note given Wilby, that he held an offsetting note from Wilby, representing only that, although a purported settlement of their former partnership had been made, as evidenced by a written release signed by Wilby, Wilby was really due him $3000, being one half of the amount McRae said he had paid in settlement of litigation pending against the partnership at the time the "release" was signed by Wilby upon receipt of $2104 from McRae, and where McRae, on the trial of the case, testified that he really had not regarded such one half liability by Wilby as a claim against his estate, Wilby being dead and McRae not "being familiar with the law" in that respect, and contended that it was the $3000 note alleged to have been signed by Wilby that constituted his offset against the note given Wilby, but which alleged note of Wilby was not mentioned for several hours at the time of the first conversation with plaintiff's counsel with McRae in Salisbury, McRae's explanation being, as shown above, that Wilby was due to pay one half of the amount paid in settlement of litigation against the partnership, and which note was not exhibited until about six months after McRae had been requested to produce it; the fact that when Wilby made a visit to McRae he collected $67.50 interest on the $3000 loan, and, although McRae stated that he gave his personal check because Wilby was short of funds and needed some cash for traveling expense, the evidence showed that the check

was not cashed for about two weeks after he received it; the fact that although McRae claimed that notes had been swapped Wilby had been demanding that McRae pay him something on account, and that he traveled from Atlanta, Georgia, to Salisbury, North Carolina, and if the testimony of McRae is to be believed Wilby gained nothing in the act of accepting a note for $3000 and at the same time signing one for a similar amount in favor of McRae.

Certainly these circumstances are calculated to make one pause in attaching credibility to the statement of McRae that he saw Wilby sign the note in question. We do not think that it could be said as a matter of law that they are not inconsistent with his testimony. The jury evidently believed that they were inconsistent therewith, and they were authorized to so find. Not being able to reconcile these circumstances with the theory of Wilby having signed a note, they were likewise authorized to discredit the testimony of Eagle, the employee, although he swore that he prepared the note at Wilby's direction and saw him sign the same. The jury's prerogative of placing their judgment on the question of the credibility of such a witness can not, in the presence of circumstances which can be said to be inconsistent with the fact testified to, be invaded by the courts. Counsel for the plaintiff in error contend that having received a $1500 note from McRae during the pendency of the partnership, which note was without consideration and was to be used only as a blind, in case Wilby's employer made inquiry concerning the amounts he was receiving monthly from the partnership, Wilby might equally be supposed to have received from McRae a note for $3000, not as evidence of McRae's personal liability for the $3000 received by him from Wilby, but only because he was simultaneously to issue McRae a note for a like amount as a protection to McRae for the note. We do not think the argument tenable. When Wilby sought and received the $1500 note from McRae, during the time of their partnership, he evidently thought he was putting himself in a position of advantage in case his receipts from the partnership should be brought in question by his employer. Inferentially, the statement would be made that the receipts were applying against a loan to McRae evidenced by the note. But a swapping of notes would not actually help Wilby in the least. The asset in the one would be offset by the liability in the other. The motive of advantage in

receiving the $1500 note would not be present in a swapping of $3000 notes. It follows that the general grounds of the motion for new trial are without merit.

■ One special ground of the motion for new trial complains of the following charge of the court: "Good character is a substantive fact and should be so regarded by the jury like all the other evidence in the case. The purpose of such testimony, gentlemen, is limited, however, to throwing light upon the truth or falsity of the alleged act of forgery complained of, and in determining what the defendant did, that is, whether he did or did not forge this note, the jury should consider all the testimony including the character testimony, as throwing light upon the probability or lack of probability of the other testimony on the question of forgery; in other words, good character, gentlemen, may throw light upon the question as to whether the defendant did or did not commit the forgery as charged." It is contended that it limited the jury to the testimony of the witnesses in determining the question of forgery of the note alleged to have been signed by Wilby, and had the effect of withdrawing from the consideration of the jury all the documentary evidence admitted with signatures of Wilby which were admitted by the plaintiff to be genuine, and that the charge was prejudicial in that the court failed to instruct the jury that they should consider the documentary evidence, as well as the testimony of witnesses, as to the signatures and as to the good character of the defendant on the question of forgery. Another ground, practically involving the same objections, is that the court failed to direct the jury's attention to the documentary evidence, although the question of forgery was the vital and controlling issue in the case, and that, consequently, the charge was prejudicial and calculated to mislead the jury to believe that such documentary evidence was not to be considered in determining the question of forgery. It appears from the record that the signatures on the documentary evidence were identified by a number of witnesses, and thus their testimony necessarily brought to the consideration of the jury as evidence the documents which were admitted with the signatures. The court in its charge could not be said to have limited the jury to the consideration of mere oral testimony, apart from the documents to which the testimony related.

In *Darden* v. *Washington*, 35 *Ga. App.* 777 (6) (134 S. E. 813),

it was held: "A charge to the jury as follows: 'You must discover [the] truth from the evidence which you have received from the stand, that is, which has been introduced on the trial of this case; you are bound by the evidence received from the stand, and from it alone you must discover the truth,' is not error where it appears that all the documentary evidence introduced (except possibly the depositions which the plaintiff objected to) was identified by witnesses upon the stand. [Citing.]" In *Hamilton* v. *State*, 18 *Ga. App.* 295, 299 (10) (89 S. E. 449), it was held: "It is further complained that the instruction to the jury to base their verdict upon the facts 'as you get them from the witness stand' excluded from their consideration documentary evidence. The documentary evidence in the case was identified by witnesses on the stand, and was part and parcel of their testimony, and the charge of the court did not limit in any way the jury's consideration of all the evidence adduced upon the trial." In *Waynesboro Planing Mill* v. *Perkins Mfg. Co.*, 35 *Ga. App.* 767 (6) (134 S. E. 831), it was held: "Although documentary evidence may have been admitted, it was not prejudicial to the plaintiff in error for the court to charge the jury as follows: 'You have seen the parties and the witnesses on the stand, and you know their interest or want of interest, and it is for you to determine from the testimony what the truth of this transaction is.'" In *Loe* v. *Brown*, 155 *Ga.* 24 (5) (116 S. E. 309), it was held: "In the absence of a proper written request, the court did not err in omitting to refer specifically to the documentary evidence introduced in the case, and in not differentiating between the oral testimony and the documentary evidence. The court in the general charge fully and fairly referred to the testimony as a whole. There was no written request for instructions upon the subject of documentary evidence; nor does it appear, upon a review of the charge as a whole, that the defendants were injured by the omission of which complaint is made." The court, in the very portion of the charge excepted to, stated that good character should be regarded by the jury as a substantive fact "like all the other evidence in the case," and never suggested that only the oral evidence or testimony constituted all of the evidence, but in other portions of the charge instructed them as to evidence in general. If more detailed instructions were desired as to the documentary evidence, a special written request should have been made. From the charge

of the court as a whole we do not think that the jury was in any way misled as to their right and duty to consider the documentary evidence. The cases cited and relied on by counsel for the plaintiff in error have been carefully considered, but it would require undue elaboration to point out wherein they are distinguishable and not applicable here.

■ Another ground complains that the court erred in failing to charge a provision of Code, § 38-709, "Other writings, proved or acknowledged to be genuine, may be admitted in evidence for the purpose of comparison by the jury," it being contended that the failure to so charge was prejudicial and harmful because the question of forgery was a vital issue in the case, and because the failure to so charge had the effect of excluding from the jury's consideration the documentary evidence with the admittedly genuine signatures of Wilby for comparison with the signature on the note claimed by the plaintiff to be forged. This Code section is simply a rule of evidence for the guidance of the court, and the documents having in fact been admitted in evidence and the court's charge having dealt with the evidence in general without eliminating the documentary evidence from the consideration of the jury, it was unnecessary to instruct them that the writings "may be admitted in evidence" when, as a matter of fact, they had already been admitted. If any specific instruction was desired as to the jury's duty to compare such writings with the signature on the note alleged to have been forged, a special written request should have been made.

■ Another ground complains that the court erred in not charging the jury, "You shall consider and compare the signatures of G. R. Wilby which have been introduced in evidence and which are admitted by the plaintiff as genuine with the alleged signature of G. R. Wilby on the note of $3000 which is sued upon by M. C. McRae, and you shall consider also all other evidence in the case in determining the question of forgery;" it being contended that the failure to charge was prejudicial and harmful because the question of forgery was a vital issue in the case, that numerous admittedly genuine signatures of Wilby had been introduced in evidence for comparison by the jury with the signature on the alleged forged note, and that the failure to charge as above set forth had the effect of excluding such documentary evidence. The court in

its general charge directed the attention of the jury to all the evidence in the case, and made it plain that an issue of forgery was in the case. It could hardly be said, under the charge, that their deliberations did not include a comparison of the signature on the note alleged to be a forgery with the other signatures on the documents introduced in evidence. If a specific instruction as to comparison of writings was desired, a special written request should have been made.

The remaining grounds of the motion for new trial, not being argued or insisted on, are treated as abandoned, and no rulings thereon are necessary.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*