39009.   JORDAN *et al.* v. FOWLER.

Decided November 8, 1961—Rehearing denied November 21, 1961.

*Joseph S. Skelton, Erwin, Birchmore & Epting, Eugene A. Epting,* for plaintiffs in error.

*William O. Carter,* contra.

Carlisle, Presiding Judge. This was a suit by a father to recover hospital, medical and burial expenses of his minor son who was killed while riding as a guest passenger in an automobile owned by the defendant, Walter Jordan, and being driven at the time by his minor son, Max Jordan. Briefly stated, the evidence tended to show that the injuries resulting in the death of the plaintiff's son occurred when the automobile in which he was riding along a dirt road made a left turn into an intersecting dirt road, and after traveling some 30 feet ran into a ditch along the right side of the road, continued traveling with two wheels in the ditch a distance of some 70 yards mounting an embankment and hurtling some 20 feet through the air where it struck a large tree, totally demolishing the right front end of the automobile and inflicting the injuries to the plaintiff's son from which he died the next day. This collision occurred in the nighttime and the evidence showed that the road was dry. The defendant, Max Jordan, testified that just prior to running into the ditch he had turned the corner at a speed of some six or eight miles per hour; that at the time he was operating the automobile in second gear; that he thought he was caused to lose control of the automobile by his right front wheel running into some loose sand and gravel in the road, and that after he

ran into the ditch the car continued to accelerate until it struck the tree. He contended that after the automobile ran into the ditch he continuously endeavored to stop it, or to turn it back into the road, but that his foot slipped off the brake pedal onto the gas pedal.

■■ Headnotes 1 and 2 require no elaboration.

■ Special ground 3 complains of a portion of the charge on damages, the criticism being that it directed the jury to return a verdict for the plaintiff for loss of services without regard to the question as to whether there was liability. Preceding this portion of the charge, the judge instructed the jury, "If you should find from the evidence that Max Jordan was negligent, but you do not find that his negligence amounted to gross negligence as herein defined, then the plaintiff would not be entitled to recover in this case. . . I charge you that in order to recover in this case the plaintiff must prove that Max Jordan was guilty of one or more of the specific acts of negligence set out in plaintiff's petition, and that such negligence amounted to gross negligence as defined elsewhere in this charge, and that such gross negligence was the proximate cause of the death of Jerry Fowler. . . If you find from the evidence under the rules of law which the court has given you in charge that the plaintiff is entitled to recover against either or both of the defendants, then you will apply the law which the court will now give you in charge." The portion of the charge complained of is the fourth paragraph following the last excerpt quoted. "In considering whether a charge excepted to is error . . . it is proper that it be considered in its context and in connection with the entire charge. 'A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, but when put together and considered as a whole may be perfectly sound. *Brown v. Matthews*, 79 Ga. 1 (4 SE 13).' *Buttersworth v. State*, 200 Ga. 13, 24 (2) (36 SE2d 301). . . It was not necessary or proper for the trial judge in instructing the jury to repeat in immediate connection with each proposition of law charged all the qualifications and exceptions applicable to it. To require him to do so would so lengthen and complicate the charge as to render it impossible to ever charge the jury fully and completely." *Mill-*

*wood v. State*, 102 Ga. App. 180, 186 (4), 187 (115 SE2d 829).

■ "The value to a parent of the services of a minor child is not determinable solely from evidence as to the amount of money the child earns or is capable of earning during its minority. The value of a child's services may be determined from all the evidence, including evidence as to the age and precocity of the child, its earning capacity, and the services rendered by it, the circumstances of the family and the living conditions, and 'from experience and knowledge of human affairs on the part of the jury.' *Savannah Electric Co. v. Dixon*, 18 Ga. App. 314 (3) (89 SE 373)." *Seaboard Air-Line Ry. Co. v. Sarman*, 38 Ga. App. 637, 640 (11) (144 SE 810). Among those things which the jury may take into consideration from its experience and knowledge of human affairs is the period of inflation now existing. *Fields v. Jackson*, 102 Ga. App. 117, 123 (115 SE2d 877). Under the foregoing rules, while the evidence of the actual earnings of the deceased might have limited the authorized recovery to a sum substantially less than that found, yet where there was evidence that the deceased was a precocious, industrious, hard-working, 15-year-old boy, the jury were authorized to infer that his rate of earnings would probably have increased considerably prior to his reaching his majority. This court can not say, under all the facts and circumstances of this case, that the verdict for $7,500 was so excessive as to warrant the inference of gross mistake or undue bias. *Western & Atlantic R. v. Burnett*, 79 Ga. App. 530, 542 (54 SE2d 357).

■ The negligence charged against the defendants in this case were the acts of Max Jordan in allegedly accelerating the speed of the automobile upon commencing to make the left turn, in thereafter continuously accelerating the speed of the automobile, in operating the automobile into the ditch and against the ditch bank, in failing to reduce the speed of the automobile, in failing to control the speed of the automobile and in operating the vehicle off the road and into the oak tree. All such acts were characterized as gross negligence. Max Jordan, one of the defendants, was the only witness testifying directly as to what happened on the occasion in question. He testified that he approached the intersection of the Golf Course Road and

Hickory Crossing Road and slowed the automobile to approximately six to eight miles per hour, putting it in second gear; that he turned the corner at that speed and ran a distance of about 30 feet when his right front wheel became caught in some loose sand and gravel on the shoulder of the road and that this caused the automobile to go into the ditch; that he endeavored to stop the car by putting his foot on the brake pedal but it slipped off onto the accelerator pedal; that he thereafter continuously endeavored to stop the car, or to drive it out of the ditch, but that he became excited and confused and was unable to do so. He further testified that at the time the automobile went into the ditch, it was traveling around 25 miles per hour. The police officers testified that upon examination of the scene they found no marks in the road indicating that the defendant had turned the corner at an excessive rate of speed, and that the tracks of the automobile after it went into the ditch indicated that he was endeavoring to turn it from the ditch. Nevertheless, the automobile traveled some 70 yards before striking the tree, in the course of which it mounted an embankment two or three feet high and was catapulted through the air a distance of some 20 to 30 feet, striking the ground immediately prior to striking the tree.

"In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." *Code* § 38-123. "The comparative weight of circumstantial and direct evidence on any given issue is a question for the jury." *Hudson v. Best,* 104 Ga. 131 (2) (30 SE 688); *Armstrong v. Penn,* 105 Ga. 229 (5) (31 SE 158). " 'The rule that the uncontradicted testimony of unimpeached witnesses cannot lawfully be arbitrarily disregarded "does not mean that the jury are obliged to believe testimony which under the facts and circumstances disclosed they in fact discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of the witness." ' The interest of a witness in the result of the suit, especially where he is a party, may always be considered in passing on his credibility; and, although he may not be con-

tradicted by any other witness, but there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him." *McRae v. Wilby*, 59 Ga. App. 401 (1, 1a) (1 SE2d 77). Under the foregoing rules of law, the jury was not bound to give credence to the contention of the defendant that the emergency in which he found himself after skidding into the ditch was due solely to the unsuspected presence of loose sand and gravel on the surface of the road.

If the only evidence of negligence in this case was the testimony of the defendant that he turned the corner at no more than six to eight miles per hour, this court would have no hesitancy in holding that gross negligence was not shown. However, under the rules of law announced above, we think the jury were authorized to infer, if the defendant did in fact turn the corner at no more than six to eight miles an hour, and if he thereafter ran into the ditch 30 feet away while traveling at a speed of 25 miles per hour and while still operating the automobile in second gear, that he was "floor boarding" and "scratching off" and that these acts contributed to his loss of control of the automobile and were a part of the negligent acts of continuously accelerating the speed of the automobile and of failing to reduce and control the speed of the automobile as charged in the petition. Likewise, the jury could have inferred that the defendant was negligent in failing to take his foot off the gas after the car went into the ditch, or that he was negligent in permitting his foot to slip off the brake pedal and onto the accelerator pedal and that all these acts and omissions constituted the gross negligence charged in the petition.

The trial court did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed. Nichols, J., concurs. Eberhardt, J., concurs specially.*

EBERHARDT, Judge, concurring specially. I am in agreement with the headnotes and divisions 1 through 4 of the foregoing opinion, and concur *dubitante* with the fifth division.

Concerning the first headnote, we may observe that there are inevitably times when one may feel that adherence to this well-established rule does not result in exact justice. But any other

policy would open a Pandora's box in every court in Georgia where there is a jury box, and would multiply the appeals. We must agree with Prince Hamlet that it is better to suffer the slings and arrows of our present fortune than to fly to others that we know not of.

This reasoning, however, does not apply to the fifth division. The problem there is whether, under the facts of this case, the plaintiff has carried the burden of showing *gross* negligence on the part of the host driver.

If there was gross negligence on the part of the driver such must have occurred after the vehicle went into the ditch. *Yearwood v. Yearwood*, 45 Ga. App. 203 (164 SE 105). Certainly it will not be asserted that the driving of the vehicle into and around an intersection at a time when there was no other traffic present, when the road was dry, and at a speed of from six to eight miles per hour could amount to such, nor, under *Yearwood*, supra, was such present under similar circumstances when the car went into the ditch at 25 miles per hour. Nor do I think that the driving of the car into the ditch, caused by the presence of loose sand and gravel on the road could amount to gross negligence. See *Saxe v. Terry*, 140 Wash. 503 (250 P 27). Consequently, if there was gross negligence it must result from the acceleration of the vehicle after it went into the ditch when the driver "panicked" after he either stepped on the accelerator instead of the brakes or when his foot slipped from the brake pedal onto the accelerator. All of the evidence was consistent with the defendant's version. A similar factual pattern appears in *Helms v. Leonard*, 170 F. Supp. 143 (W. D. Va.), a jurisdiction where a guest must prove gross negligence on the part of his host driver just as in Georgia, and where the court held that there was no gross negligence shown when it appeared that the driver had intended to apply her brakes and made an effort to do so whereupon her foot either slipped off the brake pedal or she stepped on the accelerator and pushed it, then "panicked" and drove the automobile into a stone wall some 388 feet away.

As I see it, the ruling in division 5 of the opinion virtually abolishes the distinction between ordinary and gross negligence

and, *sub silentio,* overrules *Harris v. Reid,* 30 Ga. App. 187 (117 SE 256), *Tucker v. Andrews,* 51 Ga. App. 841 (181 SE 673), and others following them. However, it must be admitted that there is authority for leaving the matter for determination by the jury—if there is evidence of negligence. We have many times held that questions of negligence and diligence, even of gross negligence and slight diligence, being questions of fact and not of law, are as a rule to be determined by the jury. *Hennon v. Hardin,* 78 Ga. App. 81, 83 (50 SE2d 236). And a case to the same effect where the factual pattern is very similar to the one sub judice is that of Siesseger v. Puth, 216 Iowa 916 (248 NW 352). Though I feel strongly that the evidence here tends rather to support a finding of accident than of negligence, and that it falls short of the standard announced in *Harris v. Reid,* supra, and *Tucker v. Andrews,* supra, yet I am reluctant to disturb a determination which the jury has made, and which has the approval of the trial judge as well as my brothers here.