## 76270. FLOYD v. THE STATE.
### (369 SE2d 316)

Carley, Judge.
　Appellant was tried before a jury and found guilty of the offense of homicide by vehicle in the first degree. He appeals from the judgment of conviction and sentence entered on the jury's verdict.
　1. The trial court, over appellant's chain-of-custody objection, admitted into evidence two vials of blood and the results of the blood-alcohol test conducted thereon. Appellant enumerates this evidentiary ruling as error. He urges that a proper chain of custody was not established in that the vials were stored in an unlocked refrigerator prior to their being taken to the crime laboratory for testing.
　"What [appellant] seeks is that the [S]tate, in order to render the evidence admissible, be required to negate all possibilities of tampering or error while the [blood] was in the [refrigerator]. This is not the law. . . . 'The evidence shows that the blood sample was handled in the normal course of testing and there is nothing in the record that creates a suspicion that the blood tested was other than that taken from the [appellant]. The identity of such blood samples need not be proved beyond all possibility of doubt or that all possibility of tampering with them be excluded. The circumstances need only establish reasonable assurance of the identity of the sample.' " *Meadows v. State*, 135 Ga. App. 758, 758-759 (219 SE2d 174) (1975). "[T]here is no evidence that [the blood] was in any way tampered with [while in the refrigerator]; the evidence shows it had been sealed and not unsealed until tested and [there was] positive testimony that no one had tampered with the sample. . . ." *Williams v. State*, 145 Ga. App. 81, 83 (3) (243 SE2d 614) (1978). A proper chain of custody was clearly established and the trial court correctly admitted the blood and test results into evidence.
　2. The trial court's failure to sustain an objection to the admission of testimony which appellant characterizes as an inadmissible legal opinion is enumerated as error. The specific contention is that,

over appellant's objection, a police officer was erroneously allowed to give his legal opinion as to the concept of "implied consent" in the State of Georgia.

A review of the record shows that the police officer did not give an opinion as to the legal concept of implied consent. What he did was to give a description of the police procedures that were followed before the blood-alcohol tests were administered to appellant. Moreover, even if we were to assume that the trial court had committed error in admitting the officer's testimony, that error was harmless. It was "highly probable that the admission of the testimony . . . did not contribute to the verdict. [Cits.]" *Little v. State*, 165 Ga. App. 389, 392 (3) (300 SE2d 540) (1983).

3. Appellant made two unsuccessful motions for mistrial during the prosecuting attorney's closing argument. The denials of those motions are enumerated as error.

With regard to the first motion, the trial court denied a mistrial but did give the jury curative instructions. Appellant thereafter failed to renew his motion for mistrial. "Where the trial judge gives corrective instructions and thereafter counsel fails to request further instruction or renew his motion for mistrial, an enumeration addressed to such ground is without merit. [Cit.]" *Chandler v. State*, 143 Ga. App. 608, 609 (2) (239 SE2d 158) (1977).

Appellant made his second motion for mistrial when the prosecuting attorney's argument touched upon the topic of the deceased victim. " 'Counsel is permitted, in the sound discretion of the court, to argue all reasonable inferences and deductions which may be drawn from the evidence. . . . [Cits.] The discretion of the trial court in handling these matters will not be disturbed on appeal except in clear cases of abuse and we find none here.' [Cits.]" *Minor v. State*, 143 Ga. App. 457, 458 (2) (238 SE2d 582) (1977). See also *Brand v. Wofford*, 230 Ga. 750, 754 (9) (199 SE2d 231) (1973). The trial court did not err in denying appellant's motion for mistrial.

*Judgment affirmed. Sognier, J., concurs. Deen, P. J., concurs dubitante.*

Deen, Presiding Judge, concurring dubitante.

While concurring, but holding serious reservations, with the majority opinion and the judgment of affirmance, I do so with Division 3 of the majority opinion doubtfully and particularly because it does not reveal what the prosecutor's argument was that it approved.

Rather than concurring only in the judgment (J/O), rendering this case a "physical precedent only" under our Rule 35 (b) and a well qualified and worthy candidate for "not to be reported" under Rule 37 (b), I vote here the seldom used but preferable, concurring vote of "dubitante." The latter word in *Black's Law Dictionary*, Fifth Edi-

tion, published by West, means: "Term is affixed to the name of a judge, in the reports, to signify that he doubted the decision rendered." See several of many cases where judges of our Georgia Appellate Courts have concurred dubitante: *Brandon v. Pritchett*, 126 Ga. 286, 290 (55 SE 241) (1906); *Stevens v. Stevens*, 227 Ga. 410, 414 (181 SE2d 34) (1971); *Studstill v. American Oil Co.*, 126 Ga. App. 722, 727 (191 SE2d 538) (1972); *Jordan v. Fowler*, 104 Ga. App. 824, 829 (123 SE2d 334) (1961). While I consider dubitante a weak concurrence, but nevertheless a full concurrence, in the case, it also has three laudable attributes and admirable advantages over the much used, presently popular J/O vote. (A) The case is a binding precedent under Rule 35 (b); (B) should always be reported under Rule 37 (a); and (C) usually provides the parties in the case, bench, bar, and public in general specific reasons for the reservations held by the judge. On the other hand, a J/O vote is like high blood pressure, a "case crippler" *sub silentio* without explanation to anyone, a handy but deadly veto weapon or widget for busy judges. It has been said that voting dubitante is holding one's nose while voting to concur, while the J/O is really a dissent as to all, but sometimes limited to less than all, comments and discussions in the case except the "judgment" rendered.

Review of the transcript of the closing argument shows that the prosecutor remarked that the victim was not there to tell her story. "She's buried. Her lips are sealed. She will have no more television to view. She'll have no more chance to go to church. She'll have no more chance to go to a gospel sing. And you have the right to conclude it's because of Elijah Floyd." I do not consider such argument impermissible.

DECIDED MAY 2, 1988.

*J. Alvin Leaphart*, for appellant.

*Glenn Thomas, Jr., District Attorney, Stephen D. Kelley, Assistant District Attorney*, for appellee.