A90A0513. CARTER v. THE STATE.
(395 SE2d 891)

BEASLEY, Judge.

Carter challenges the validity of two searches, one of his luggage

and one of his jacket, in this appeal from a bench conviction for driving too fast for conditions, OCGA § 40-6-180, and violation of the Georgia Controlled Substances Act by possession of less than one ounce of marijuana, OCGA § 16-13-2 (b). He was acquitted, in effect, of driving while his license was suspended or revoked, OCGA § 40-5-121.

The evidence viewed to uphold the verdict, *Thomas v. State*, 175 Ga. App. 873, 874 (1) (334 SE2d 903) (1985), showed the following. Sheriff's Deputy Everidge was notified that the driver of a vehicle involved in a wreck had reported it and was en route with a wrecker back to the scene. Everidge arrived first and saw Carter's car overturned in the grass median with extensive damage. Officer Alverson then arrived, followed by Carter with the wrecker.

It was raining hard so Everidge asked Carter to sit in the patrol car to relate information. Without objection from Carter, Everidge patted down his pockets to check for weapons and had him sit in the car. Carter told the officer he had been traveling south at seventy to seventy-three miles per hour when he lost control. An eyewitness truck driver confirmed that Carter had lost control on the wet road after passing him. It was approximately 10:45 to 11:00 p.m. The roadway had a large amount of standing water. The speed limit was sixty-five miles per hour.

A check on Carter's Florida driver's license informed Everidge that it had been suspended for points violation. Everidge advised Carter he was under arrest for driving with a suspended license and driving too fast for conditions and would be transported to the county jail to make bond.

On the way to jail, Carter told Everidge he had left his bags in the wrecker and requested that the police get them. Everidge responded that he would have Alverson bring them to the jail, and he contacted Alverson who was still at the scene. He brought the two bags while Carter was being booked and took them into an adjacent room to check for weapons before turning them over to Carter. The search revealed $65,000 in cash. When asked to explain, Carter said it represented life savings, a death settlement, and the proceeds from a property sale. A search of Carter produced a small plastic bag of marijuana in his top jacket pocket.

Appellant contends the searches were unlawful because his arrest was unlawful, as it was based on a charge for which (1) he did not receive actual or legal notice of the suspension of his driver's license as required by OCGA § 40-5-60; (2) the arresting officer failed to verify a service date of notification of suspension of his license and to put such date on the Uniform Citation pursuant to OCGA § 40-5-121 (b) (1); (3) the State failed in its proof.

The unlawful arrest argument is first premised on the assump-

tion that Carter was arrested solely because of the suspended license charge. When asked on recross to confirm that Carter would not have been jailed but for the suspended license charge, the arresting officer testified that was not necessarily so, that on a charge of driving too fast for conditions, it was up to the officer to charge the driver or make him post bond, even though in Carter's case he doubted that would have happened.

Even assuming Carter was arrested solely because he was suspected of driving with a suspended license, the arrest was not illegal for the reasons urged. The legality of the warrantless arrest depended on whether or not at the time of the arrest the officer had probable cause to believe that an offense had been committed. The cause need not have risen to the level of proving guilt at trial. See *Davis v. State*, 172 Ga. App. 193, 194 (1) (322 SE2d 497) (1984); *Bradford v. State*, 149 Ga. App. 839 (256 SE2d 84) (1979). The factfinder's later finding of a failure of the State's evidence at trial would not retroactively vitiate the arrest if the arrest was supported by probable cause at the time. This it was, due to the results of the arresting officer's on-the-scene check of appellant's out-of-state license.

Appellant's statutory arguments also fail. OCGA § 40-5-121 (b) (1), as in effect on the incident date (January 9, 1989), required that the arresting officer verify a service date and record it on the citation. Such "version of the statute . . . was in effect from July 1, 1988 until April 10, 1989. The current statute requires such verification only where the license suspension is the result of a failure to respond to a citation (OCGA § 40-5-56) or an insurance cancellation. See OCGA § 40-5-121 (b) (1) (1989); Ga. L. 1989, p. 519, § 15." *State v. Brooks*, 194 Ga. App. 465, 466, n. 1 (390 SE2d 673) (1990).

For the purpose of addressing appellant's arguments, we assume without deciding that these statutory requirements applied to suspensions by other states. Even if at the time a legally sustainable charge for the offense did require service verification and recordation, the fact that the officer did not or could not accomplish this did not diminish the probable cause furnished by the report which the officer received. Likewise, Carter's alleged non-receipt of notice of license suspension, if not proved otherwise by the State, may have made conviction unsustainable, see *Sumner v. State*, 184 Ga. App. 374 (361 SE2d 536) (1987), but would not have affected the legality of his arrest on the charge.

As to the grounds raised in the supplemental brief, attacking the warrantless searches as being non-exigent and not incident to arrest, they are outside the scope of the enumeration of error, *Smith v. State*, 186 Ga. App. 303, 308 (3) (367 SE2d 573) (1988), they are an impermissible expansion of the original brief, *Quick v. State*, 166 Ga. App. 492, 493 (1) (304 SE2d 916) (1983), and they were not properly

raised either by the motion to suppress or in the motion for "directed judgment," as defendant called it, or "directed verdict," as denominated by the opponent and the court.[1] Although counsel brushed up to these grounds at the close of the State's evidence, he did not articulate them or invoke a ruling on them. This Court does not reach them.

Thus we hold that the trial court did not err in refusing to suppress the seized evidence, or in admitting it into evidence at trial, on the bases urged by appellant.

*Judgments affirmed. Deen, P. J., concurs dubitante. Pope, J., concurs specially.*

DEEN, Presiding Judge, concurring dubitante.

I vote a reluctant concurrence in this case. The majority opinion relies mainly on *State v. Brooks*, 194 Ga. App. 465 (390 SE2d 673) (1990). In the latter case, appellant was initially arrested and charged with speeding, DUI, and driving with a suspended license. This is much stronger than in the instant case under consideration where the initial arrest or charge was driving while the license was suspended. The drug charges came later. The defendant was acquitted as to the charge on which he was first arrested, that is, driving while the license was suspended. I am reluctant to equate the two charges but concur nevertheless, although doubtfully.

"Rather than concurring only in the judgment (J/O), rendering this case a 'physical precedent only' under our Rule 35 (b) and a well qualified and worthy candidate for 'not to be reported' under Rule 37 (b), I vote here the seldom used but preferable, concurring vote of 'dubitante'. The latter word in *Black's Law Dictionary*, Fifth Edition, published by West, means: 'Term is affixed to the name of a judge, in the reports, to signify that he doubted the decision rendered.' See several of many cases where judges of our Georgia Appellate Courts have concurred dubitante: *Brandon v. Pritchett*, 126 Ga. 286, 290 (55 SE 241) (1906); *Stevens v. Stevens*, 227 Ga. 410, 414 (181 SE2d 34) (1971); *Studstill v. American Oil Co.*, 126 Ga. App. 722, 727 (191 SE2d 538) (1972); *Jordan v. Fowler*, 104 Ga. App. 824, 829 (123 SE2d 334) (1961). While I consider dubitante a weak concurrence, but nevertheless a full concurrence, in the case, it also has three laudable attributes and admirable advantages over the much used, presently popular J/O vote. (A) The case is a binding precedent under Rule 35 (b); (B) should always be reported under Rule 37 (a); and (C) usually

---

[1] There is no such motion as one for a directed judgment in a bench trial recognized in Georgia criminal procedure. Whom would the court in a bench trial direct? A motion for directed verdict, on the other hand, is inappropriate when there is no jury. *Smith v. General Motors &c. Corp.*, 98 Ga. App. 840, 841 (107 SE2d 334) (1959).

provides the parties in the case, bench, bar, and public in general specific reasons for the reservations held by the judge. On the other hand, a J/O vote is like high blood pressure, a 'case crippler' *sub silentio* without explanation to anyone, a handy but deadly veto weapon or widget for busy judges. It has been said that voting dubitante is holding one's nose while voting to concur, while the J/O is really a dissent as to all, but sometimes limited to less than all, comments and discussions in the case except the 'judgment' rendered." *Floyd v. State*, 187 Ga. App. 27, 28 (369 SE2d 316) (1988). Compare "Concurrence in Judgment without Opinion" (J/O) and "Reluctant Concurrence." Witkin, Manual on Appellate Court Opinions (West Pub. Co. 1977), §§ 115; 116, p. 223. The former is a J/O vote under our Court Rule 35 (b), while the latter reluctant concurrence is the same as concurring dubitante.

POPE, Judge, concurring specially.

I write separately in response to the dicta contained in footnote 1 of the opinion. Although it is true that a "verdict" is not rendered in a bench trial, I know of no legal impediment to prevent a lower court sitting without a jury in a criminal case from granting a motion that judgment of acquittal be entered in defendant's favor. In fact, a cursory review of cases rendered by this court reveals that lower courts when sitting as the trier of fact regularly entertain, and this court regularly reviews on appeal, motions for directed verdicts or judgments in criminal cases. See, e.g., *Sanders v. State*, 182 Ga. App. 581 (356 SE2d 537) (1987); *Waters v. State*, 177 Ga. App. 374 (339 SE2d 608) (1985); *Moran v. State*, 170 Ga. App. 837 (318 SE2d 716) (1984). In my opinion the problem is one of semantics or what to call such a motion in these type cases. Regardless of the nomenclature, I would not want to discourage the bench and bar from engaging in the practice of expeditiously disposing of those cases in which the State fails to meet its burden of proof.

DECIDED JULY 3, 1990.

*R. Avon Buice*, for appellant.
*Carl A. Veline, Jr., Solicitor*, for appellee.