### A09A0083. JOHNSON v. THE STATE.

(676 SE2d 884)

MILLER, Chief Judge.

Following a stipulated bench trial, Randy Johnson was convicted of possession of cocaine with intent to distribute (OCGA § 16-13-30) and a headlight violation (OCGA § 40-8-22) and acquitted of driving with a suspended license (OCGA § 40-5-121).[1] Johnson appeals from the trial court's final judgment, arguing that the trial court erred in failing to grant his motion to suppress the cocaine and other items seized in a search of the car Johnson was driving. Discerning no error, we affirm.

The parties agree that this appeal requires review of the trial court's application of the law to undisputed facts. Accordingly, we apply a de novo standard of review. *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008).

The record shows that on the evening of January 12, 2007, Officer Andrew Payne of the Athens-Clarke County Police Department stopped Johnson, who was driving his girlfriend's car, because the driver's side headlight was out. Payne informed Johnson of the reason for the stop and asked Johnson for his name and date of birth and for his driver's license, which Johnson provided. Payne ran Johnson's information through central dispatch and was advised that Johnson's license had been suspended for failure to appear in court on a traffic offense. Payne inquired if Johnson had been served with notice of the suspension, and dispatch informed Payne that notice had not been served. As a result, Payne served Johnson with written notice of suspension.

Payne then placed Johnson under arrest for driving with a suspended license and conducted a search of Johnson's car incident to the arrest. During the search, Payne found six orange packets containing crack cocaine in a jacket in the back seat. Johnson admitted that the jacket belonged to him. Payne testified that he most likely would not have arrested Johnson for the headlight violation. Rather, his standard procedure would have been to write a citation.

---

[1] In addition, an order of nolle prosequi was entered on a count of unlawful window tint (OCGA § 40-8-73.1).

Following a hearing, the trial court denied Johnson's motion to suppress, and, in its final judgment after the stipulated bench trial, the trial court reiterated its rationale for refusing to suppress the evidence in response to Johnson's request for reconsideration of the motion to suppress.[2]

Johnson contends that the search of his girlfriend's car was not conducted pursuant to a lawful arrest. Specifically, Johnson argues that Payne lacked probable cause to arrest him in view of the fact that central dispatch advised Payne that Johnson had not been served with notice of the suspension of his license. We disagree.

A warrantless arrest

> is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officer[ ] and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed . . . an offense.

(Citation and punctuation omitted.) *State v. Thurmond*, 203 Ga. App. 230, 231 (416 SE2d 529) (1992); *Willis v. State*, 263 Ga. App. 740, 742 (589 SE2d 282) (2003). Here, after observing Johnson driving and pulling him over for a headlight violation, Payne ascertained that Johnson's license was suspended for failure to respond to a traffic citation. See OCGA § 40-5-56 (a) ("[T]he department shall suspend the driver's license . . . of any person who has failed to respond to a citation to appear before a court of competent jurisdiction . . . for a traffic violation other than a parking violation."). Under such circumstances, Payne had probable cause to arrest Johnson. *Cox v. State*, 250 Ga. App. 69, 70 (550 SE2d 127) (2001) ("[O]nce the officer, after observing Cox operate a vehicle, determined that Cox's license was suspended, probable cause for arrest was established.") (footnote omitted); *McCullough v. State*, 211 Ga. App. 16, 18 (438 SE2d 369) (1993) (computer printout verifying that defendant had been driving under suspended Tennessee license provided probable cause for arrest). The fact that central dispatch informed Payne that Johnson had not been served with a notice of suspension does not alter our conclusion.

OCGA § 40-5-60 provides that "[a]ll revocations and suspen-

---

[2] The motion to suppress was not filed in this case below but instead was filed in a related probation revocation proceeding. During the hearing on the motion to suppress, however, the parties acknowledged that the motion was also intended to apply in this case. Anticipating this appeal, the parties submitted the transcript of the motion to suppress hearing and other relevant materials as exhibits during the bench trial. We note that the trial court's initial order denying the motion to suppress is not included in the record on appeal.

sions provided for in this chapter shall be effective on the day the driver receives actual knowledge or legal notice thereof, whichever occurs first. Notice of suspension by operation of law shall be considered legal notice."[3] As we recently reaffirmed in *State v. Fuller*, 289 Ga. App. 283 (656 SE2d 902) (2008), a driver cannot be convicted of violating OCGA § 40-5-121 unless he or she received notice of suspension, as required by OCGA § 40-5-60. In *Fuller*, we affirmed the reversal of the defendant's conviction in the probate court for driving with a suspended license because the State failed to prove beyond a reasonable doubt that the defendant received notice that her license had been suspended for accumulation of points pursuant to OCGA § 40-5-57.[4] Id. at 285; see also *Farmer v. State*, 222 Ga. App. 591 (474 SE2d 760) (1996) ("In order to establish the offense of driving with a suspended license, the State must show that the accused was driving, that his license was suspended, and that the accused had received actual or legal notice of the suspension.") (citation and punctuation omitted); *Sumner v. State*, 184 Ga. App. 374, 375 (361 SE2d 536) (1987).

Contrary to Johnson's argument, dispatch's report that Johnson had not been served with notice of suspension did not affirmatively establish that Johnson had no actual or legal notice of the suspension and that the license suspension therefore was not effective. Service of written notice is not the only means by which a driver may obtain actual knowledge of a suspension. For example, a driver has actual knowledge if, on a prior occasion, a police officer has verbally notified him or her of the suspension. See *Arnold v. State*, 189 Ga. App. 900, 901 (2) (377 SE2d 918) (1989). Even in the absence of actual knowledge, a driver may be convicted if he or she has legal notice of suspension.

The term legal notice has been referred to as the same as

---

[3] A new version of OCGA § 40-5-56, regarding suspension of license for failure to respond to a citation, will take effect on January 1, 2010. Under the revised statute, the language on a uniform traffic citation will be sufficient to provide a driver with notice of suspension:

The department shall include language in the uniform traffic citation stating that failure to appear and respond to such citation shall result in the suspension of the violator's driver's license. . . . The language reflected on a uniform traffic citation issued in this state shall be sufficient notice of said suspension to support a conviction for a violation of Code Section 40-5-121 if such person drives subsequent to the imposition of such a suspension following his or her failure to appear.

OCGA § 40-5-56 (a) (version effective January 1, 2010).

[4] Subsequent to *Fuller*, OCGA § 40-5-60 was amended to add a third sentence, which provides: "Any license suspension or revocation mandated in this chapter following a person's conviction for any offense, including suspensions due to the accumulation of points pursuant to Code Section 40-5-57, shall be by operation of law." The amendment took effect January 1, 2009. Ga. L. 2008, p. 171, § 6.

constructive notice. Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it.

(Citations and punctuation omitted.) *Hale v. State*, 188 Ga. App. 524, 525 (1) (373 SE2d 250) (1988). Notwithstanding the information he received from central dispatch, Payne had no way of knowing if Johnson had actual knowledge that his license was suspended by means other than formal service of notice or whether facts or circumstances existed that would have placed Johnson on constructive notice. We do not believe that this uncertainty rendered Payne powerless to arrest Johnson.[5]

Our prior decision in *Carter v. State*, 196 Ga. App. 226 (395 SE2d 891) (1990), is instructive. Following a one-car automobile accident, a police officer interviewed the defendant, determined through a computer check that the defendant's Florida driver's license was suspended, and placed the defendant under arrest. Id. at 227. During subsequent searches of the defendant and two bags that had been in his possession, police recovered a small bag of marijuana. Id. After he was convicted of driving too fast for conditions and possession of less than one ounce of marijuana, the defendant appealed, arguing that his arrest and the subsequent searches were unlawful because, inter alia, he did not receive actual or legal notice of the suspension of his driver's license. Id. at 226-227. We held that, assuming arguendo the defendant was arrested solely for driving with a suspended license, the arrest was lawful:

The legality of the warrantless arrest depended on whether or not at the time of the arrest the officer had probable cause to believe that an offense had been committed. The cause need not have risen to the level of proving guilt at trial. The factfinder's later finding of a failure of the State's evidence at trial would not retroactively vitiate the arrest if the arrest was supported by probable cause at the time. This it was, due to the results of the arresting officer's on-the-scene check of appellant's . . . license.

(Citations omitted.) Id. at 228. Likewise, we conclude here that

---

[5] We note that, previously, OCGA § 40-5-121 provided that "[t]he charge of driving with a suspended or disqualified license shall not be made where the suspension is a result of a failure to respond under Code Section 40-5-56 . . . unless the arresting officer has verified a service date and such date is placed on the uniform citation." OCGA § 40-5-121 (b) (1) (2005). A 2006 amendment deleted this subsection, and no such requirement was in place at the time of Johnson's arrest. See Ga. L. 2006, p. 449, § 12.

Johnson's arrest was lawful, and the factfinder's ultimate conclusion that Johnson did not have notice of the suspension did not "retroactively vitiate" the probable cause supporting the arrest. "[Johnson's] alleged non-receipt of notice of license suspension, if not proved otherwise by the State, may have made conviction unsustainable, but would not have affected the legality of his arrest on the charge." (Citation omitted.) Id.

For the reasons set forth above, we affirm the trial court's judgment following Johnson's bench trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 1, 2009.

*Dustin K. Kirby*, for appellant.
*Kenneth W. Mauldin, District Attorney, Leslie S. Jones, Assistant District Attorney*, for appellee.