A09A2387. THE STATE v. CRUMPTON.
(692 SE2d 39)

ADAMS, Judge.

Darius Otto Crumpton was charged with possession of cocaine with intent to distribute and possession of an illegal substance

within 1,000 feet of a housing project. The trial court granted Crumpton's motion to suppress the contraband, and the State appeals.

> On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review. (Citations omitted.) *Peterson v. State*, 294 Ga. App. 128, 129 (1) (668 SE2d 544) (2008).

*State v. Hogans*, 301 Ga. App. 261 (687 SE2d 230) (2009).

So viewed, the evidence presented at the motion to suppress hearing, including the video recording of the stop, shows the following: The arresting officer, Sergeant Frank Swanson, testified that at about 1:00 a.m. on October 31, 2008, he was on patrol with his partner when he saw Crumpton driving alone. Swanson recognized Crumpton because he had looked for him on outstanding warrants in the past; Swanson also knew Crumpton had been incarcerated for burglary after being convicted of that crime in another county where Swanson had previously been employed. And several months previous to the incident here, Swanson had assisted in a drug investigation involving Crumpton, but that investigation was concluded without Crumpton being arrested. Despite Swanson's knowledge of Crumpton's criminal history, however, he could not recall ever personally arresting Crumpton and the only knowledge he had of Crumpton allegedly being involved with illegal drugs arose out of the earlier investigation that concluded without an arrest.

Swanson testified that when he saw Crumpton on the night of the incident here, the first thing that caught his attention was that Crumpton seemed to be turning away so that the occupants of the patrol car could not see his face. He then noticed Crumpton move across two lanes of traffic and turn into the parking lot of an assisted living home. After Crumpton slowly circled the parking lot, Swanson, who had positioned his vehicle so he could watch Crumpton, got behind Crumpton as he drove back out onto the street. Swanson noticed that half of Crumpton's rear taillight was out, so he activated his lights and pulled Crumpton over.[1]

---

[1] Swanson also testified that he knew that at one point Crumpton's driver's license had

As Swanson approached Crumpton's car, he observed that Crumpton was leaned "way" back in his seat with his legs fully extended and locked out, and that he was zipping up his denim shorts. He also noticed that when Crumpton sat back down in his seat, his right foot was shaking uncontrollably. Swanson testified that his first thought after observing these actions was that Crumpton was trying to conceal contraband.

Swanson wrote Crumpton a warning ticket for the taillight violation and then questioned him concerning whether he had any illegal substances or stolen property in the vehicle. Crumpton told him no, but refused Swanson's request that he consent to a search, explaining that normally he would say yes but that he was in a hurry that night.

Swanson testified that based on his previous experience as a narcotics investigator, he was suspicious that Crumpton was concealing drugs in his anal cavity, so he informed Crumpton that he was going to call for a canine unit. The drug dog and his handler arrived, and after circling the car once, alerted on the driver's door on the back seam near the door handle. According to the video recording made of the stop, the dog also alerted on the back rear panel of the vehicle. Based on the canine's alert, Swanson told Crumpton to step out of the vehicle so that it could be searched. Swanson and another officer searched the vehicle but did not find any contraband.

Swanson then told Crumpton that he was also authorized to search his person based on the canine's alert. Crumpton told Swanson to go ahead because he did not have anything on him. Swanson found $556 in the left pocket of Crumpton's shorts. Swanson told Crumpton he wanted to search his crotch and buttocks area and Swanson pulled down his shorts, completely exposing his genital area. When Swanson instructed Crumpton to turn around, Crumpton became upset and agitated and told Swanson he did not want him to touch him there. Swanson told Crumpton he needed to look in his anal cavity, and they walked away a short distance from the other officers at the scene for more privacy. Crumpton pulled down his shorts about halfway, but according to Swanson, squeezed his buttocks together so tightly they were shaking. Swanson again told Crumpton he needed to look up his "butt-crack" and Swanson said "[n]o, you ain't doing that." Swanson informed Crumpton that based on his observations that night and what he knew about his history, he was going to take Crumpton into custody and apply for a search warrant for his person.

been suspended, but that he ascertained that Crumpton currently had a valid license before he effectuated the stop.

Crumpton was transported to the station and placed in a room with a surveillance monitor. Another officer was watching the monitor while Swanson worked on the warrant application. The officer who was monitoring Crumpton noticed that Crumpton was grunting and shifting around in the chair. He saw an object come out from the leg of Crumpton's shorts and observed Crumpton move the object with his foot. That object was subsequently discovered to be a fecal-covered bag containing crack cocaine.

Based on the foregoing, the trial court determined that although the officer had a reasonable, articulable suspicion warranting Crumpton's continued detention once the traffic stop had ended, the officer lacked probable cause to conduct an invasive search of Crumpton's person or to arrest him. The trial court also found that while Crumpton initially consented to the search of his person, he withdrew that consent once the search became more invasive.

The trial court apparently accepted the State's evidence as credible, and it does not appear that the trial court's findings of fact or the facts pertinent to our review are disputed. Rather, our review involves whether, in finding that the officer lacked probable cause, the trial court erroneously applied the law to the evidence,[2] as the State contends. Hence, our review of the trial court's ruling is de novo. *McDaniel v. State*, 263 Ga. App. 625, 626-627 (1) (588 SE2d 812) (2003).

The question for our determination is thus

> whether, at the moment the arrest was made, the officers had probable cause to make it — whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a suspect had committed or was committing an offense.

(Footnote omitted.) *State v. Bryant*, 284 Ga. App. 867, 869 (644 SE2d 871) (2007). However, probable cause need not rise to the level of proving guilt at trial. *Souder v. State*, 301 Ga. App. 348 (687 SE2d 594) (2009); *Johnson v. State*, 297 Ga. App. 254, 257 (676 SE2d 884) (2009), citing *Carter v. State*, 196 Ga. App. 226 (395 SE2d 891) (1990).

---

[2] We note again that the evidence is construed to support the trial court's judgment. *State v. Goode*, 298 Ga. App. 749, 750 (681 SE2d 199) (2009) (physical precedent only), citing *Slayton v. State*, 281 Ga. App. 650, 650-651 (637 SE2d 67) (2006), noting that we must accept inferences drawn by the trial court, even if we disagree with them, as long as there is evidence in the record to support them.

And

> [p]robable cause . . . "need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction." Thus, "(a) combination of suspicious circumstances evincing the conduct of a criminal act may amount to sufficient probable cause to uphold a warrantless arrest or search." But where we have found probable cause through the totality of circumstances, there generally has been some evidence directly linking the defendant to suspected criminal activity.

*Lawrence v. State*, 300 Ga. App. 731, 733 (686 SE2d 352) (2009).[3]

In this case, the arresting officer testified that he arrested Crumpton based on the information he had received prior to this arrest, what he witnessed that night prior to the stop, the fact that Crumpton fully exposed his genital area but would not let him view his anal cavity, and the fact that the drug dog alerted on the seam of the door of the vehicle where Crumpton was seated.

In our view, the trial court correctly determined that these circumstances did not "combine to show probable cause." *Lawrence*, 300 Ga. App. at 734. Although the arresting officer knew of Crumpton's prior criminal history, that information apparently included only one incident in which Crumpton was suspected of illegal activity involving drugs and no arrest or charges arose out of the incident. And even if Crumpton consented to a search of his person and even allowed the officers to view his genital area, consent to search does not normally encompass a body cavity search, *Walker v. State*, 299 Ga. App. 788, 791 (2) (683 SE2d 867) (2009), and refusal to allow a more invasive search did not give the officer probable cause to arrest Crumpton. As to the drug dog's alert, the video of the stop shows the dog also alerted on the rear panel of the vehicle as well as the driver's side door and contraband was not found in either location. Lastly, although the State attempts to rely on the fact that the dog alerted on the seat where Crumpton was seated, the video shows the dog was not allowed inside the vehicle until after Crumpton was handcuffed; thus, that alert was not one of the circumstances known to the officer at the time of the arrest.

Because the officers lacked probable cause to arrest Crumpton, the evidence discovered following that arrest was properly sup-

---

[3] In *Lawrence*, we noted several cases in this category, where, in addition to suspicious circumstances, the officer also had more direct evidence of criminal activity, such as detecting the strong smell of marijuana or receiving a tip from a confidential informant. 300 Ga. App. at 733-734.

pressed, and the trial court's order granting Crumpton's motion to suppress must be affirmed.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 3, 2010.

*J. David Miller, District Attorney, Cynthia D. Hendrix, Assistant District Attorney,* for appellant.
*Samantha J. Magis,* for appellee.